# Fife, Jones and Stewart *versus* The Commonwealth.

Under the Act of 6th November, 1856, providing for writs of error in certain criminal cases, the extent to which such cases may be reviewed by this court is limited, to the decisions of the court below, on the trial, on the points of evidence or law excepted to by the defendants, and noted and filed of record by the court.

The exceptions noted and filed at the time, are to receive the same reasonable construction they do in civil causes, and the plaintiff in error must show that he may have been injured by the decision of the court below.

A declaration made by a jailor to a prisoner, after her arrest, "that if the Commonwealth should use any of them as witnesses, he supposed it would prefer her to either of the others" arrested and charged with the same offence, is not sufficient to exclude a voluntary statement or confession made by such prisoner, to a magistrate, on the same day, after being cautioned by the magistrate, that such statement might be used as evidence against her.

Such a declaration of the jailer contained neither a *promise* nor *threat*, but was the mere expression of his own opinion as to a preference by the Commonwealth, upon a contingency which was left as uncertain as it was before.

In such cases, the chief question is whether the inducement held out to the prisoner was calculated to make the confession an untrue one, and if not, it will be admissible.

This, as a preliminary question, is to be decided by the court before which the trial is had, and in those cases its decision will not be reversed, unless it appears there was clear and manifest error.

Where several prisoners are tried jointly for the same crime, such confession is evidence on the trial against the one who made it, although it implicates the others, and although it may tend to prejudice the minds of the jury against the other prisoners.

An alleged motion for a separate trial made by one of the prisoners, and overruled by the court, but not noted on the record and excepted to at the time, cannot be reviewed on a writ of error.

The bills of exception are the only record of the admission or rejection of evidence on the trial, the want of which cannot be supplied by any statement contained in the charge of the court.

That an objection was made to evidence at the time of its admission, can only be shown by such bill of exception, and not appearing in that way it will be presumed to have been received without objection.

An instruction to the jury, that they were "not at liberty to disbelieve as jurors while they believed as men," though liable to be misunderstood by jurors, is not erroneous as matter of law.

Setting up an *alibi* as a defence by a prisoner, does not change the burthen of proof under his plea of "not guilty," nor waive his right to demand from the Commonwealth full proof of his guilt.

So far as the making out of that particular defence is concerned the burthen is thrown upon the prisoner, and the allegations of the prosecution are admitted to be true; but. a resort to this kind of evidence does not change the burden of proof on the other questions in the cause.

A trial on the merits is, by virtue of the Act of 21st February, 1814, a waiver of all irregularities and defects in the mode of summoning and returning the jurors.

On an indictment against three, a joint verdict, finding each defendant, by name, guilty of murder in the first degree, may be regarded as a distinct verdict against each defendant.

ERROR to the Oyer and Terminer of *Allegheny county.*

[Fife, Jones, and Stewart *v.* The Commonwealth.]

Henry Fife, Charlotte Jones, and Monroe Stewart, were jointly indicted for the murder of George Wilson.

The defendants being arraigned, the counsel of Monroe Stewart moved for a separate trial, which was refused by the court, but no exception appears to have been taken to this ruling at the time, nor was it noted regularly upon the record. The jury was impannelled as to all, and they severally pleaded not guilty. On the trial, the Commonwealth offered the written confession of Charlotte Jones, taken before H. A. Weaver, Esq., Mayor of Pittsburgh, on the 3d May, 1857. In reference to this confession, Phillips, the jailer, the mayor and his clerk testified as follows :—

Mr. Phillips sworn. "She was brought to jail on Saturday. I had her cell locked on Saturday night, and allowed no one to be with her. On Sabbath morning I unlocked it. She expressed a great anxiety to get out and walk with the other women. I told her I could not allow her out of her cell till her final hearing before the mayor. We had some conversation about the murder—I don't remember what it was. I recollect of saying to her she had not told the truth when she was examined on Saturday, before the mayor. She asked me how I or Mayor Weaver knew that she had not told the truth? I answered her by saying that the mayor and his police were in possession of facts directly contradicting what she had stated. She asked me how they got these facts? I said that herself, Fife, and Stewart had all been making statements, and that none of them agreed with each other. I said, Fife had related more truth than any of the three. I said to her that if the Commonwealth would use any of them as a witness, I supposed it would prefer her to either of the others.

"When I was leaving her cell, at eight o'clock in the morning, she requested me to come back. I went back, as requested by her, between one and two o'clock, same day, when what I have related occurred—between one and two o'clock.

"I did not take her to the mayor's office. I was in the room as a spectator, in the mayor's office.

"She never suggested she wanted to see counsel. She never was denied seeing counsel. She did not desire to have counsel before Mayor Weaver."

Mayor Weaver sworn. "I took the statement of Charlotte Jones. I got word that she was very anxious to see me. I sent a messenger to jail, to bring her down. In less than an hour she came. She came into the private office; I ordered the door to be closed, so that no strangers could get in. She came forward to me; I said I understood she wanted to come before me to make a true statement regarding the McKeesport murder. She replied, she did. I then said, Anything you may say to me, I want to caution you not to criminate yourself; it may be used in evidence against you. She replied, I understand you. A chair was presented to

[Fife, Jones, and Stewart v. The Commonwealth.]

her. I waited ten minutes, or more. I wanted her to be perfectly composed before I went on. I requested Mr. Whitten, my clerk, to prepare to write her statement down, when he had completed the heading of it. I turned round again to her; I said to her, I want you to be particular, and not say anything that may have a tendency to criminate yourself, for it may be used in court against you. She replied, I am going to tell the truth, and the whole truth, with regard to this matter, if I have to hang for it. After it was written down, it was read to her twice. I asked her if it was correct? She said it was."

Mr. Whitten, sworn: "I am clerk of the mayor. I remember when she came to the mayor's office and gave her statement. The mayor cautioned her three or four times not to say anything that might criminate herself. She seemed irritated at the repeated cautions of the mayor, and said: 'I will state the truth and the whole truth, if I am to hang for it.' She seemed irritated and impatient at the frequent cautions of the mayor. This is her mark to her statement. I saw her make her mark. I repeated her statement to her, from time to time, as I wrote it; and when it was finished I repeated the whole of it to her, before she signed, or made her mark to it."

The court overruled the objections of defendants' counsel and admitted the written confession in evidence, as against Charlotte Jones. In it she admitted that she, Fife, and Stewart went to Wilson's house, who was an uncle of hers, for the purpose of robbing him of a large sum of money which they supposed he had; and when there that Fife and Stewart murdered Wilson and his wife against her remonstrances; and detailed minutely the manner and circumstances of the killing and their movements immediately afterwards. In the reading of the confession the court directed the names of Fife and Stewart to be suppressed wherever they occurred in it. And the court, in afterward charging the jury, said:—

"The jury are again reminded, that her voluntary statement is evidence to criminate no person but herself. No other name than her own, as implicated, appears, or has been in evidence before you in her statement."

The defence of *alibi* was not distinctly set up by Monroe Stewart, but some evidence was given as to his whereabouts during the night of the murder. Upon which the court charged the jury:—

"The best writers on criminal evidence say, that *alibi* evidence lies under a great and general prejudice, and ought to be heard with uncommon caution. It is at all times a dangerous defence, often a desperate one; for you will perceive it admits that all the prosecution alleges is true,—it only denies that he who sets up such a defence, was there when the offence was committed.

"It is the duty of the court to caution the jury thus; and it is

[Fife, Jones, and Stewart *v.* The Commonwealth.]

the duty of the jury, in all cases, to scan with scrutiny the testimony bearing upon an *alibi*.    This is the law, and it is my duty so to charge you.

" You see, then, that when a person accused of crime sets up the defence of *alibi*, it lies upon him to prove to the clear satisfaction of the jury where he was.

" Alexander Speer, a witness for the prisoner, swears that after Stewart went to bed, he rose from his bed and went away, and was gone, as witness believes, an hour, or an hour and a half, as he supposes.   Then Stewart proves not that he was in bed, or in the house, but that he left his bed, after he had got in with Speer.

" It now becomes of the last moment for Stewart to show where he was during this time; this hour and a half sworn to by Speer, to prove to you clearly where he went and where he was.   Has any witness proved to your clear satisfaction where he was during this time?   Has any witness been called for that purpose by the prisoner?   You have him in the bar-room of Wolf till Wolf showed him to his room.   You have him in bed with Speer.   He leaves the bed and is gone.   Speer proves this.   You must be satisfied by clear testimony that he was not at George Wilson's.   He must account to you for his whereabouts, from the time he got up and left his bed until he was next seen in the morning.   Has this been done to your satisfaction?   Has this been done at all?   No witness for the defence has told you where he spent this time, or how he spent it; but witnesses for the Commonwealth have testified where they saw him and what he was about during a brief period of that night."

. His Honour, in commenting on the evidence necessary to produce conviction, said :

" He who is to pass on the question (of guilt or innocence) is not at liberty to disbelieve as a juror while he believes as a man."

The jury found " that the defendants Henry Fife, Monroe Stewart, and Charlotte Jones, are guilty of murder in the first degree."

A motion was made for a new trial and in arrest of judgment, which, on the 25th July, 1857, were overruled, and the defendants severally sentenced to be hanged.

The defendants thereupon procured an allowance of this writ, and assigned the following errors :

1. The verdict is joint, and not several as required by law.

2. The sheriff made no return to the venire for summoning the jurors in the case.

3. The court erred in the admission of the confessions of Charlotte Jones.

4. In charging the jury—" For he who is to pass on the ques-

[Fife, Jones, and Stewart v. The Commonwealth.]

tion (of guilt or innocence) is not at liberty to disbelieve as a juror while he believes as a man."

5. In refusing the motion of Monroe Stewart for a separate trial.

6. The court erred in charging the jury, the defence of *alibi* "admits all that the prosecution alleges to be true."

7. In charging that Stewart "must account to you for his whereabouts from the time he left his bed until he was next seen in the morning."

*T. Howard* and *R. P. Fleniken*, for plaintiffs in error.—1. Cited 1 *Arch.* 176; Commonwealth *v.* Cook, 6 *S. & R.* 577.

2. An Act of Assembly (*Purd. Dig.* 470) cures defective returns: but in no logical or legal sense can it cure that which has no existence.

3. The objection to the confession is that Mr. Phillips, the jailer, in whose custody she was, stated to her, that if she would make a confession, she being a woman, the state would take her for a witness. In a short time she was taken before the mayor and made the confession; Phillips being in the office at the time. That the mayor cautioned her was not to the point, it was not calculated to remove the impression made upon her mind by Phillips's language. The mayor should have fully removed all hope: 1 *Phil. Evi.* 410 and the cases there cited; Commonwealth *v.* Harman, 4 *Barr* 270; 2 *Russell* 833, 836.

4. The language here used was quoted from Commonwealth *v.* Harman, 4 *Barr* 273. We submit, with all respect for the opinion of C. J. GIBSON, that it is not a proper instruction in a capital case. Although jurors are still men, they are to act as jurors; their private knowledge can have no weight. In the jury box they do not act "as men," but only as jurors.

5. We contend that a separate trial is or should be matter of right in a capital felony. In this case one of the defendants had made several confessions, differing as to who committed the murder. One of these implicating the two other defendants was read upon the trial. It was only evidence against the one who made it, and should not have been heard by the jury who were to try the other defendants. Once heard, the impression could not be effaced. But a joint trial virtually defeats the defendants' right of peremptory challenges. True, each defendant may challenge peremptorily twenty jurors, but the exercise of this right by each may destroy the benefit to all. They are allowed that a defendant may to that extent select his jury, and when tried alone, the object is attained.

6. This appears to us strange doctrine. Can it be, that if a defendant attempts to establish an *alibi* and fails, that the jury are to take as confessed all the allegations in the indictment?

This we believe is not the law. It is part of a defence, and when proved is conclusive as to that point. If it fail, it admits nothing as to the guilt of the party who offers it. The utmost that could be claimed is, that it does not deny that the offence charged was committed: Commonwealth *v.* Kimball, 24 *Pick.* 366.

*F. H. Collier,* District Attorney, and *Roberts* and *Wingard,* for the Commonwealth.

1. As to the joint verdict of conviction, or acquittal on the whole charge against one or more defendants, *Stark. Cr. Plead.* tit. *Ver.* 378, 379, 387, 34 & 41; *Ach. Cr. Pl.* 34; 3 *D. & E.* 106.

2. It is too late after verdict to raise this objection; it is cured by verdict: Act 21 February 1814, *Purd. Dig.* 475; 5 *Wh.* 79; Jewell *v.* The Commonwealth, 10 *Harris* 100.

3. The language used by Mr. Phillips was, that if the Commonwealth would use any of them as a witness, he supposed it would prefer her to either of the others. She made no confession to Phillips. Her statement was to the mayor. She was repeatedly cautioned and advised ·that what she would say might be used against her. Where such is the case, the confession or statement is evidence against the party making it: 1 *Phil. Ev.* 410; Rex *v.* Hawes, 6 *C. & P.* 404; 1 *Phil. Ev.* 411; 4 *Dall.* 116; 4 *Barr* 271.

4. No argument will be attempted to sustain C. J. Gibson: Commonwealth *v.* Harman, 4 *Barr* 272.

5. The refusal of the motion for a separate trial is not the subject of error. It is not matter of right, but discretionary with the Court: U. S. *v.* Collyer, Hawkins *v.* State, 9 *Ala.* 137; *Whart. on Hom. Appx.*; Commonwealth *v.* Manson, 2 *Ash.* 31; State *v.* Wise, 7 *Rich.* 9; State *v.* Loper, 16 *Me. Rep.* 293; People *v.* Vermilyeu, 7 *Cow.* 108, 383; Bixie *v.* State, 6 *Ham.* 86; U. S. *v.* Wilson, 1 *Bald.* 78; U. S. *v.* Gilbert, 2 *Sumner* 20; Bosler *v.* Commonwealth, 7 *J. J. Marsh.* 598; State *v.* Smith, 2 *Iredell* 402; People *v.* Howell, 4 *John.* 296.

6 and 7. On this point they referred to the charge of the court in connexion with the part assigned for error, and argued that taking the whole together, the jury could not have misunderstood the meaning of the court.

The opinion of the court was delivered by

Lewis, C. J.—The plaintiffs in error have been convicted of murder in the first degree, and this writ of error is brought to review the proceedings. We have nothing to do with the facts of the case. These have been passed upon by the jury under the direction of the court below. · Our business is solely with the questions of law brought to our notice by the record, and by the

[Fife, Jones, and Stewart v. The Commonwealth.]

bills of exception to the evidence and to the charge of the court. The Act of Assembly of the 6th of November, 1856, gives to every defendant on trial for murder or voluntary manslaughter a right to "except to any decision of the court upon any point of evidence or law;" and the act directs the exception to be "noted by the court and filed of record, as in civil cases." As this is the first case that has reached this court under the recent Act of Assembly, it may not be amiss to indicate the principles which, we think, ought to guide us in administering justice under its provisions. Before the enactment referred to, this court had no power to review the decisions of the criminal courts, in admitting or rejecting evidence, or in giving instructions to the jury. In these matters, those courts were essentially supreme. Hereafter, questions of evidence and instructions to the jury in the cases mentioned in the act, are to be reviewed here. But to what extent? and for what purpose? The extent is limited to the decisions of the court during the trial, on *the points of evidence or law excepted to by the defendants, and noted and filed of record by the court.* Beyond these, we have no right to touch a single decision of the court in admitting or rejecting evidence, or in charging the jury. The purpose is to do justice. It was certainly no part of the object of the legislature to obstruct the course of justice in capital cases, by opening the door to reversals upon mere technical and immaterial points in no way affecting the substantial merits of the case. The exceptions are to be "noted and filed of record as in civil cases," and, in our judgment, are to receive the same reasonable construction that they receive in civil cases. It is not sufficient that an abstract or technical error has taken place. The plaintiff in error must show that he excepted to it at the time, and ~~they~~ gave the court and the opposite counsel an opportunity to correct it. He must also show that he may have been injured by it, for an error which does him no harm furnishes him with no just cause of complaint. In all cases brought here for review, under the Act of 6th November, 1856, it will be the duty of the court to regard substance and not form, and to correct those errors only which appear to have a bearing upon the merits of the particular case, or may operate injuriously as precedents in other cases.

In this case the only bill of exception to evidence is that which relates to the admission of the written confession of Charlotte Jones. The purpose for which it was offered is not stated in the bill, nor are the grounds of objection set forth. It is therefore sufficient for the plaintiffs in error, if they can show any legal ground, to exclude it; and the Commonwealth may, in like manner, show that it was admissible for any legal purpose. The objection to it relied upon here is, that it was obtained by threats and promises. The only threats shown were statements of the

jailer, in which he informed her that "she had not told the truth when she was examined on Saturday before the mayor;" "that the mayor and his police were in possession of facts directly contradicting what she had stated;" "that she, Fife, and Stewart had all been making statements, and that none of them agreed with each other;" "that Fife had related more truth than any of them.". The bill of exception does *not show* whether these communications were made in good faith, or designed as an artifice to procure a confession. If the latter, they are like the artifice used to procure a confession from a prisoner by inducing him to believe that his accomplices had been arrested, which was held to be no ground for excluding the confession: Rex *v.* Burley, 1 *Phil. Ev.* 104, 2 *Rus. C. L.* 647. If the former, they are mere communications of facts and opinions which might be useful for the consideration of the prisoner in regulating her course. But in neither case can they be regarded as threats. They contain no intimation of an intention in any quarter, to punish or injure her if she refuses to confess.

The alleged *promise* consists of the remark made by the jailer, in the conversation referred to, that "*if the Commonwealth would use any of them as a witness,* he *supposed* it would prefer her to either of the others." This was *no promise.* There was not even an expression of opinion, that the Commonwealth would use either of them as a witness. There was nothing in it but the *supposition* of a preference by the Commonwealth, upon a contingency which was left as uncertain as it was before; and it was neither stated, nor hinted, that the preference would depend upon previously making a confession. If the prisoner had acted upon that hint, it is reasonable to suppose that she would have endeavoured to make terms with the district attorney, so as to be received as a witness. But nothing of the kind appears. On the contrary, she desired an interview with the mayor; and on being brought before him, she was repeatedly cautioned by that officer not to criminate herself, and was informed that anything she might say might be "used in evidence against her." Here was a very significant intimation, that instead of being received as a witness against others, she would herself be placed on trial for her life. She answered, "I understand you." When the caution was repeated she replied, "I am going to tell the truth and the whole truth with regard to this matter, *if I hang for it.*" From this expression it might be very fairly inferred that she was making the confession, not for the purpose of saving her life, but with the knowledge that it would put her in still greater peril of the gallows. The confession was then received by the mayor, and reduced to writing. The several parts were read over to her from time to time as the writing progressed, and, when it was finished, the whole was read over to and signed by her. This is

[Fife, Jones, and Stewart v. The Commonwealth.]

the substance of the preliminary testimony, stated in the bill of exception. The judge, in overruling the motion for a new trial, states, that "nearly every fact it contains was proved by other witnesses before her statement was offered in evidence." But as the proofs thus referred to by the judge, are not set forth in the bill, we can take no notice of them. The confession being admitted, the court instructed the jury that it was not evidence against the other prisoners.

It is impossible to reconcile the decisions on this branch of the law; and the reason seems to be, that reporters and elementary writers do not always bear in mind the true test on which the admission or exclusion of such evidence depends. In 1792, when Chief Justice McKEAN was presiding, the Supreme Court of this state declared, that "the true point for consideration is, whether the prisoner has falsely declared himself guilty of a capital crime:" Commonwealth v. Dillon, 4 Dall. 117. In deciding this point the chief question is, whether the inducement held out was calculated to make the confession an untrue one. If not, it will be admissible: Wh. C. L. 318; Arch. C. P., 9th ed. 110; 2 Rus. C. L. 845; Rex v. Thomas, 7 C. & P. 345. This is a question of fact to be determined, in the first instance, by the court. In the great variety of circumstances existing in the numerous cases reported, it is natural that there should be some diversity in the decisions upon them. But the principle is well settled that where the admissibility of evidence depends upon a preliminary question of fact, to be tried by the court, its decision is not to be reversed unless in a case of clear and manifest error. The court that sees and. hears the witnesses, must be presumed to have better means of judging, on a question of fact, than the appellate tribunal, where the witnesses are neither seen nor heard, and where it often happens that their testimony is very imperfectly reported. A majority of the judges of this court are of opinion, that they see no error in admitting the confession of Charlotte Jones.

Fife and Stewart have no legal cause of complaint, because it was not admitted against them, and the court did all that could be done on a joint trial to save them from being injured by it, when they directed the jury not to regard it as evidence against any one but Charlotte Jones herself. It may be that it had, nevertheless, some influence on the minds of the jury against them, because it implicated them as the chief actors in the horrid crime charged. But, when several are tried together, competent evidence against one cannot be excluded on the ground that it may prejudice the rest. There is no perfect escape from such a prejudice but that of granting each prisoner a separate trial. It is unnecessary to express an opinion on the right of prisoners, in cases where peremptory challenges are allowed, to demand separate trials, if they sever in their pleas, and make their demand

in due time: United States *v.* Sharp, *et al.*, 1 *Pet. C. C.* 118; Commonwealth *v.* Drew & Quimby, 4 *Mass.* 391; People *v.* Howell, 4 *John.* 301; People *v.* Vermilyeu, 7 *Cowen* 138. When the question properly arises it will deserve the most serious consideration. In this case there is nothing on the record to show that the claim was made and denied. No admission of the judge in overruling the motion for a new trial can be substituted for the orderly statement on the record of the time and circumstances of each material step in the progress of the cause.

It is said that when the confession of Charlotte Jones was read the names of Fife and Stewart were omitted. This was doubtless done to protect them from being affected by the statements of their co-defendant; and that course is not without countenance on the books on evidence: 1 *Phil. Ev.* 108; 2 *Russel on Cr.* 365. The better opinion is, that all the names and every word must be read just as it is, and that the court should tell the jury that the confession is not evidence against any one besides the person making it: Rex *v.* Clewes, 4 *Car. & Payne* 221; 19 *Eng. Com. Law*, 354. But as no exception was taken to the decision, if any such decision were made, we have no right whatever to reverse for the supposed error. The bills of exception are the only record of the *decisions* of the court in *admitting* or *rejecting evidence*. The charge is nothing more than a *record of the instructions* given to the jury. We cannot make either answer the purposes of the other. A mere reference in the charge to a piece of evidence given on the trial does not warrant us in presuming that the evidence was objected to at the time. This must appear by the bill of exception, and, in the absence of it, the presumption is that the evidence was admitted without objection.

It is made matter of complaint that the judge, in his charge, among other remarks, said that " he who is to pass on the question (of guilt or innocence) is not at liberty to disbelieve as a *juror* while he believes as a *man*." Notwithstanding the high authority which sanctions the use of this language, it is possible that some jurors may occasionally be misled by it. Men, in their social conduct and business transactions, often act on bare *suspicion*, without evidence, and this, some jurors might possibly suppose, is what is meant by their *belief* as *men*, contradistinguished from their belief as *jurors*. But it is impossible for us to supply jurors with intelligence and judgment, and equally out of our power to prescribe to the courts below the language which the judges are to use in communicating instructions. The judge who endeavours to express his thoughts in a style so plain and simple that he will be readily understood by the most unlearned men on the jury, best performs this part of the duties of his high office. The question for us to decide, however, is not whether the court made use of the language best understood by the jury, but

[Fife, Jones, and Stewart *v.* The Commonwealth.]

whether instructions have been given which are erroneous in point of law. It must be remembered that jurors are *men*, and that it is because they have *human* hearts and sympathies and judgments that they are selected to determine upon the rights of their fellow-men. If they were more or less than *men* they would not be the constitutional peers of the prisoner, and would be disqualified to decide his cause. The term "jurors" means nothing more than *twelve men* qualified and sworn to try a cause according to the evidence. Their oaths *as jurors* rest on their consciences *as men*, and *as men* they are accountable to God and their country for their verdict. Nothing more is demanded of them as jurors than an honest exercise of their judgment as men. The evidence which produces conviction on their minds in one capacity works the same result in another. Their belief is the same in both. There was therefore no error in law in adopting the language used by Chief Justice GIBSON in The Commonwealth *v.* Bridget Harman: 4 *Barr* 273.

It is assigned for error that the court told the jury that the defence for *alibi* "admits all that the prosecution alleges to be true," and that "Stewart must account to you for his whereabouts from the time he left his bed until he was seen in the morning." If we are to construe this as an instruction that by making this defence the prisoner changed the burthen of proof under his plea of not guilty, and waived his right under that plea, to demand from the Commonwealth full proof of his guilt, we should be bound to say that it was a cruel and monstrous misapprehension of the law. But the charge, although not as free from ambiguity on this point as could be desired in a capital case, will not, when carefully examined in all its parts, admit of such a construction. When the judge made the remarks complained of in these assignments, he was speaking of the defence of *alibi* alone, and is to be understood as saying that, for the purposes of that particular defence, the burthen of proof was thrown upon the prisoner, and the allegations of the prosecution are admitted to be true. In this we cannot say that there was error. In *Wills on the Rationale of Circumstantial Evidence*, p. 115, the author, speaking of the defence of *alibi*, says that "a resort to that kind of evidence implies an admission of the truth and relevancy of the facts alleged," 41 *Law Lib.* But it is very clear that a resort to that kind of evidence neither changes the burthen of proof on the other questions in the cause, nor in any manner entitles the Commonwealth to a verdict against the prisoner without proof of his guilt beyond reasonable doubt. This we understand to be the doctrine of the court below. The judge told the jury that "the law exacts a conviction wherever there is legal evidence to show the prisoner's guilt beyond a reasonable doubt"—that "circumstantial evidence is legal evidence," and that "the jury are the judges of the effect

[Fife, Jones, and Stewart *v.* The Commonwealth.]

of the evidence." He then asks, " do the facts and circumstances of this case point with moral and legal certainty to the prisoners on trial as the guilty agents, *in exclusion of any other reasonable supposition or hypothesis deducible from the evidence?*" Here was certainly an intimation, which any intelligent jury might understand, that the evidence to justify a conviction must " point to the prisoners as the guilty agents with moral and legal certainty," and that it must be strong enough to *exclude every other supposition deducible from it.* This was a recognition of the fundamental rule in deciding upon circumstantial evidence, which is, that the circumstances must not only all concur to show that the prisoners committed the crime, but they must be inconsistent with any other rational conclusion: *Wharton's Cr. L.* 343, note 4. But the judge, in various parts of the charge, made other remarks to show that the cause was put to the jury *on the whole evidence,* and *not on the implied admission arising from a resort to the particular defence referred to.* A majority of the judges of this court are of opinion that no substantial error in law has been pointed out in the charge.

The panel of jurors is annexed to the *venue,* and signed by the sheriff and commissioners. If this was regarded as no return, the prisoners should have objected to it before going to trial. A trial on the merits is by virtue of the Act of 1814 a waiver of this objection: 10 *Harris* 94.

It is complained that the verdict is joint and not several. The verdict finds each prisoner guilty by name. It is true that it may be called an entire thing, though it includes the case of several persons. Yet it is a whole consisting of parts essentially distinct, so that in substance there are as many verdicts as there are defendants. Each prisoner had a separate right to poll the jury as to his particular case, and there is nothing in the form of the entry to show that this, or any other right peculiar to each prisoner was denied: Commonwealth *v.* Cook *et al.,* 6 *S. & R.* 581.

On a careful review of all the errors assigned, a majority of the judges are of opinion that no legal ground has been shown for reversing the proceedings.

It is considered and adjudged that the sentences severally pronounced against the plaintiffs in error be and the same are hereby affirmed.