Commonwealth v. Johnson, Appellant.

|217    77|<br>|227  ²114|

*Criminal law—Murder—Confession.*

To exclude a voluntary confession of guilt some inducement must be held out to prompt to falsehood, and of this the trial court must be the judge in the first instance, and its ruling will be set aside only for manifest error.

On the trial of an indictment for murder it appeared that when the prisoner was in jail he sent for an acquaintance to become his bail. The latter refused. The acquaintance testified at the trial that when the prisoner started to tell about the killing he was told that he was not obliged to say anything unless he desired to do so, and that whatever he said might be used against him. After this caution he made a confession without any inducement or hope having been held out to him. *Held*, that the confession was properly admitted in evidence.

*Criminal law—Murder—Principal—Accessory.*

A person may be convicted of murder of the first degree where it appears that he entered into a plot with another by which the latter was to do the killing, while he himself should wait some little distance from the house for about three-quarters of an hour to allow the actual murderer to escape, and then set fire to the house to conceal the crime, and that this plot was carried out.

Argued Jan. 7, 1907. Appeal, No. 295, Jan. T., 1906, by defendant, from judgment of O. &. T. Bradford Co., Dec. T., 1904, No. 13, on verdict of guilty of murder of the first degree in case of Commonwealth v. Charles Johnson. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Indictment for murder.    Before FANNING, P. J.

The facts are stated in the opinion of the Supreme Court.

Verdict of guilty of murder of the first degree.    Defendant appealed.

*Error assigned* among others was in submitting the case to the jury.

*I. McPherson*, with him *Lilley & Wilson*, for appellant, cited as to the admission of the confession: Com. v. Clark, 130 Pa. 641.

*Charles E. Mills*, district attorney, with him *David E. Kaufman* and *Wm. Maxwell*, for appellee.

OPINION BY MR. JUSTICE BROWN, February 25, 1907:

There was sufficient evidence in this case to establish the corpus delicti. What it was, need not be set out in detail. The prisoner was indicted for the murder of Maggie B. Johnson, the wife of his brother, Bigler Johnson. The latter, having been indicted for her murder, was adjudged by the court below on his plea of guilty to have been guilty of murder of the first degree and sentenced to death. This judgment was affirmed in Commonwealth v. Johnson, 211 Pa. 640, and he was subsequently executed.

The murder was a most atrocious one. Bigler Johnson was not living with his wife, but was paying her $6.00 per month for her support. That he might be freed from this burden, she was murdered in her home on the night of September 18, 1904, and, with her, a child, about ten years of age, who was her companion. To conceal the crime, the house was burned. The charred remains were found in the ashes. The appellant was indicted for murder as one of the participants in the killing of his sister-in-law, and the only questions to be determined by us on this appeal are the sufficiency of the evidence to justify his conviction of murder of the first degree and the proper submission of the case to the jury by the trial judge.

Without the appellant's confession, made October 25, 1904, the circumstantial evidence of his guilt was weak, but not so

weak that the court was bound to say to the jury that without it there could be no conviction. In no part of the charge were they distinctly told that the circumstantial evidence was sufficient to convict, though they might have inferred from the instructions that it was, if they believed it. The evidence upon which they manifestly did convict and upon which they must have understood the court to say that the case of the commonwealth chiefly rested, was the confession.

On October 25, 1904, the prisoner, then in jail, sent for G. C. Hollon, and asked him to become his bail. Hollon refused, telling him that the case looked dark for him. The prisoner then stated that he had not done the killing, but had "done the burning, or burned the building." He was then told by Hollon that if he was only guilty of that he would be punished accordingly, and he shortly afterwards made the confession offered at the trial. Hollon testified that the prisoner was told he was not obliged to say anything unless he desired to do so ; that no inducement or hope had been held out to him ; that he was told that whatever he said might be used against him, and, after this caution, the confession was made. In substance the prisoner admitted that on the night preceding the murder he heard his mother speaking to other members of the family in regard to killing her daughter-in-law, Maggie B. Johnson ; that the next morning he called her attention to it and she gave him no particular reply ; and that on Sunday, September 18, he and Bigler Johnson were in Towanda, when Bigler talked to him about killing his wife. The following is from the confession of the prisoner taken down as he made it : "He (Bigler) asked the hack driver if the train was gone, he told him yes ; he said he would go down home and leave his satchel at Steve Sullivan's ; he said he and Ma was going to put Mag. out of the way ; Nancy was going to stand outside the house watching. He said 'I will give you and Lanson three dollars a piece if you will burn the house ;' I told him I did not want to have anything to do with it; he said he would give me the three dollars 'just as soon as I earned it;' I said 'get found out anyway;' he said 'it won't;' he said 'if you don't do it, I will get you in it anyway;' I said 'I don't want anything to do with it;' he said 'what do you say ? ' he said 'Lanson said he would go

up with you to burn the house;' so he asked me what time I would be down; I told him about eight o'clock or half past eight; he said they would be down there by the bridge, Powers' bridge, and I went down there from Will's; they were there by the bridge, Bigler and Ma, Lanson and Nancy; he said 'you got any matches?'; I said 'no;' he reached in his pocket and give me a handful of matches.  Q.  Who was this?  A.  Bigler; and I put them in my pocket and we went up; he said ' don't go too fast, so I can go down and change my clothes and go up town;' and then I walked along up the road, me and Lanson.  We waited there to the. four corners and he came along and whistled.  Q.  Which four corners was that?  A.  Where you turn up towards Perry Pool's up that river road.  He told us to wait about three-quarters of an hour and that would give him a chance to get to town.  Q.  Bigler told you?  A.  Yes; and we waited along the road there about three-quarters of an hour, and then went up and poured oil on the carpet and floors on the bedroom and on the outside of the house and set the fire, and went down the road, went back home; when got down by Herb Lamb's looked back and the house was all in flames; Lanson, he went on down home and I went up to Will's."

" To exclude a voluntary confession of guilt, some inducement must be held out to prompt to falsehood, and of this the trial court must be the judge in the first instance, and their ruling will be set aside only for manifest error : Fife v. Commonwealth, 29 Pa. 429 ;" Commonwealth v. Johnson, 162 Pa. 63.  After having heard a recital of the circumstances under which this confession was made, there was no semblance of error in admitting it.  But even after it was admitted the trial judge, with all due regard for the rights of the prisoner, instructed the jury : " While the question of the admission of this alleged confession was primarily for the court, and it was received in evidence, yet we say to you, carefully weigh the evidence, in the light of the defendant's surroundings and environment, his apparent mental calibre, his age, the fact that he was in jail, that he was trying to secure bail and what was said, and from all the evidence determine whether or not the confession or statement read was freely and voluntarily made, as we have explained to you.  If it was not, exclude it from

your consideration.   Direct your inquiries in the same manner to the other statements, and if they were not voluntarily made, exclude them also from your consideration, treating them all the same as though they never had been offered in evidence, and base your verdict solely upon the remaining testimony in the case.   If, however, you find the confession was freely, voluntarily made by the defendant after being properly warned, it is important evidence in the case for your consideration."

But it is contended that even if the confession of the prisoner was voluntary and true, it did not not connect him with the actual commission of the crime, and under it he was at most guilty only as accessory after the fact.   The answer to this is that he was in the plot before the murder was committed and remained in it until it was consummated by the burning of the house.   After Bigler had planned it he told him what he was about to do and assigned to him work to be done in carrying out the murderous scheme.   The prisoner agreed to do what was asked of him.   If he had not so agreed in advance of the commission of the crime to aid in its concealment and in the escape of the murderer, the murder might not have been committed.   What he agreed to do was in the eye of the law an agreement to aid and abet, and he carried out his agreement.   If, in pursuance of an agreement with Bigler, he had gone with him to the house and stood outside of it while the murderer went in to kill the woman, and, when he emerged, had fired it to conceal the crime and facilitate the escape of the guilty party or parties, that the degree of his guilt would have been no less than that of the actual murderer cannot be questioned.   Instead of doing that he did what must be regarded as the same thing in determining the degree of his guilt.   He took his iniquitous post at some distance from the house, waiting for the murder that he knew was about to be committed, and, after the lapse of about three-quarters of an hour, the time agreed upon by Bigler and himself as sufficient to give the former a chance to get away, he went to the house and fired it in pursuance of his previous agreement to do so.   At the time the murder was being committed he was assenting to it by agreement with the actual perpetrator of it, and, with the perpetrator's previous knowledge, had taken a place near the scene of the crime for the purpose of aiding and en-

couraging its commission, and this, in the judgment of the law, made him constructively present aiding in the commission of the murder. " When the law requireth the presence of the accomplice at the perpetration of the fact, in order to render him a principal, it doth not require a strict, actual, immediate presence, such a presence as would make him an eye or ear witness of what passeth. Several persons set out together, or in small parties, upon one common design, be it murder or other felony, or for any other purpose unlawful in itself, and each taketh the part assigned him ; some to commit the fact, others to watch at proper distances and stations to prevent a surprise, or to favor, if need be, the escape of those who are more immediately engaged. They are all, provided the fact be committed, in the eye of the law present at it ; for it was made a common cause with them, each man operated in his station at one and the same instant towards the same common end ; and the part each man took tended to give countenance, encouragement and protection to the whole gang, and to insure the success of their common enterprise:" Foster's Crown Law, 349, 350, Discourse 3, sec. 4.

No one of the assignments can be sustained. All are overruled and the judgment is affirmed, with direction that the record be remitted for the due execution of the sentence.