From George Ross Eshleman, Lancaster, Pa.

---

## Commonwealth v. Rocci.

*Criminal law — Constitution of Pennsylvania — Section 9 of article i of Declaration of Rights—Evidence by accused against himself—Finger-prints of prisoner.*

1. Section 9 of article i of the Declaration of Rights provides that in all criminal prosecutions the accused cannot be compelled to give evidence against himself. This privilege protects a person from any disclosure sought by legal process against him as a witness, but does not prohibit the taking of the finger-prints of the accused without his consent, nor the use of them at trial for comparison with finger-prints found at the scene of the crime.

2. "The constitutional inhibition has reference to testimonial utterances by the defendant and may not be used to prevent the establishment of the truth as to the existence or non-existence of certain marks of identity."

Felonious entry and larceny. Rules for new trial and in arrest of judgment. Q. S. Berks Co., Dec. Sess., 1925, No. 260.

*George Eves* and *Oliver M. Wolff,* for Commonwealth.

*Bertram J. Murphy,* for defendant and rules.

SCHAEFFER, P. J.—This defendant has been convicted upon an indictment charging him with felonious entry and larceny. The case is now before us upon motions for a new trial and in arrest of judgment.

Upon the trial, the Commonwealth proved that a certain laundry building had been feloniously broken into and entered, that a safe therein had been opened and rifled, that certain finger-prints found upon pieces of glass from the broken window-pane and upon a lock-box taken from the safe were identified with the prints of certain of the defendant's fingers as taken by the police upon his arrest. There was no evidence of any nature whatsoever which connected the defendant with the crime other than the finger-prints.

The defendant does not deny that a conviction can be well founded upon evidence of the identity of finger-prints alone without corroboration: In re Castleton's Case, 3 Crim. App. 74.

Commonwealth v. Rocci.

The contention of the defendant here is that the court erred in refusing to permit the defendant to show, by cross-examination and by direct evidence, that the prints of the defendant's fingers, enlarged photographs of which were admitted in evidence, were obtained by the police from the defendant by force and duress. The defendant insists that the same rules must be applied to the admissibility of the photographs of his finger-prints as are applied by the courts in the matter of the admissibility of confessions: Com. v. Epps, 193 Pa. 512, 516; Com. v. Johnson, 217 Pa. 77; Com. v. Aston, 227 Pa. 112; and that if it appear from the testimony of the witnesses for the Commonwealth that the finger-prints were not made freely and voluntarily by the defendant, the photographs of them must be excluded; but if it appear that defendant made the prints voluntarily, the photographs should be admitted; and if subsequently in the course of the trial there be evidence tending to contradict the witnesses for the Commonwealth that the prints were voluntarily made, then the question of the photographs is for the jury, who must be instructed that if they find that the finger-prints were not freely and voluntarily made by the defendant, they must wholly disregard the photographs admitted in evidence and, in the absence of other evidence (as here) establishing the guilt of the defendant, acquit the defendant.

We ruled that whether or not the finger-prints were freely and voluntarily made by the defendant was irrelevant and immaterial, in the absence of any offer to prove that defendant's fingers had been marred or disfigured, or in the absence of anything tending to show that the prints, of which photographs were offered in evidence, were not in fact the true and correct prints of defendant's fingers.

We do not understand that the defendant contends that finger-prints, like confessions, are likely to be untrue and incorrect, and, therefore, untrustworthy evidence, merely because they are not freely and voluntarily made. A finger-print taken for purposes of identification, unlike a confession, is not in itself a declaration against interest which, in the nature of things, derives its trustworthiness from a free and voluntary operation of the mind, unaffected by promises of hope or reward, or by threats of consequences.

Did our ruling deny to the defendant the protection of section 9 of article I of the Declaration of Rights of the Constitution of Pennsylvania, which provides: "In all criminal prosecutions, the accused . . . cannot be compelled to give evidence against himself?" The privilege against self-incrimination dates from the struggle against the Ecclesiastical Courts and the Court of Star Chamber in England. In these courts the practice grew up of compelling the accused to take an oath to answer truly the questions asked of him, and in many instances he was convicted by his own testimony. It was against this employment of legal process to extract from a person's own lips an admission of guilt that the constitutional provisions establishing the privilege against self-incrimination were aimed. The privilege protects a person from any disclosure sought by legal process against him as a witness: 4 Wigmore on Evidence, § 2263. It would seem to follow that an accused's finger-prints are not within the protection of the rule.

To hold that the photographs of defendant's finger-prints could not be admitted in evidence because the defendant may have objected to the taking of the finger-prints would be as illogical as to hold that a concealed deadly weapon taken from the person of one accused of carrying concealed deadly weapons without his consent could not be introduced into evidence, or that opium similarly found and taken from the person of one charged with illegal possession of that drug could not be admitted. On the same theory, one

charged with larceny of a watch might object to testimony to the effect that the stolen watch was found and taken from his pocket without his consent, or a defendant might refuse to appear in court because the Commonwealth desired to call witnesses for his identification by an inspection of his features.

The same issue was raised in People v. Sallow, 165 N. Y. Supp. 915, where the authorities have been gathered and carefully considered in an elaborate opinion. In holding that it would be a forced construction to hold that by taking her finger-prints the defendant was compelled to give evidence against herself, Judge Wadhams says (page 924): "By the requirement that the defendant's finger-prints be taken, there is no danger that the defendant will be required to give false testimony. The witness does not testify. The physical facts speak for themselves; no fears, no hopes, no will of the prisoner to falsify or to exaggerate could produce or create a resemblance of her finger-prints or change them in one line, and, therefore, there is no danger or error being committed or untruth told. . . . The constitutional inhibition . . . has reference to testimonial utterances by the defendant and may not be used to prevent the establishment of the truth as to the existence or non-existence of certain marks of identity."

In Holt v. United States, 218 U. S. 245, 252, Justice Holmes says: "But the prohibition of compelling a man in a criminal court to be a witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material. The objection in principle would forbid a jury to look at a prisoner and compare his features with a photograph in proof."

In Johnson v. Com., 115 Pa. 369, 395, the prisoner was requested to afford a witness on the stand an opportunity of seeing him and hearing the sound of his voice, so that the witness might the more intelligently testify whether he was or was not the man by whom she was confronted at the time in question. Of this, Mr. Justice Sterrett (page 395) says: "To hold that this was a violation of the clause of section 9 of the Declaration of Rights, which declares the accused 'cannot be compelled to give evidence against himself,' would, in my judgment, be a strained construction of that instrument."

In Shaffer v. United States, 24 App. D. C. 417, it was held that the taking of a photograph of the accused without his consent was not a violation of the principle that a party cannot be required to testify against himself. In United States v. Cross, 20 D. C. 365, Justice Coxe said: "We think that officers having prisoners in custody have a right to acquire information about them even by force, and that, for example, when his photograph is taken or his measurements taken, it is simply the act of the officer and not compelling him to give evidence against himself." In People v. Van Wormer, 67 N. E. Repr. 299 (Court of Appeals of New York), it was held that the taking of the shoes from one charged with murder and placing them in the foot-marks leading to the house of the deceased was not a violation of the constitutional provision in question. In People v. Mead, 50 Mich. 228, 15 N. W. Repr. 95, it was held to be permissible to measure defendant's shoe and compare it with a rubber produced by the prosecution. In State v. Graham, 74 N. C. 648, evidence obtained by compelling the accused out of court to put his feet in a certain track for the purposes of identification was held admissible.

The criminal law exists for the protection of society. Its provisions are calculated to exculpate the innocent; but they should not, through sentimentalism, be extended so as to make the apprehension and conviction of the guilty more difficult. To hold that the ancient provision against arbitrary

Commonwealth v. Rocci.

tyranny here in question will prevent the use of the methods of modern science in the unraveling of crime would be to make the criminal law the cloak and defender of malefactors rather than of society.

And now, to wit, April 5, 1926, the rules for a new trial and in arrest of judgment are dismissed.

From Charles K. Derr, Reading, Pa.