Commonwealth of Pennsylvania *v.* Bernstine, Appellant.

Argued October 5, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*George J. Edwards, Jr.,* for appellant.

*Franklin E. Barr,* Assistant District Attorney and with him *John Monaghan,* District Attorney, for appellee.

OPINION BY BALDRIGE, J., December 26, 1931:

The appellant, Louis J. Bernstine, a member of the bar, was indicted with Cyrus H. Raul and Neil Harkins, in bill 1783, March Sessions, 1930, charging conspiracy to extort, extortion and compounding a felony. He was indicted also with Raul in bill 1784, March Sessions, 1930, containing the same counts. The charges of compounding a felony were quashed on motion of defendants and a demurrer to the evidence by Raul was sustained. Harkins was acquitted and a verdict of guilty of conspiracy to extort and extortion in the two bills was rendered against Bernstine. A new trial on the charge of conspiracy to extort was granted but motions for a new trial and "to set aside the verdict of the jury and discharge the defendant" were refused in the extortion counts; he was sentenced under the extortion count only in bill 1783. This appeal followed.

This indictment charges extortion at common law and under the Act of June 9, 1911, P. L. 833, which provides, that "if any person or persons shall, by means of written, printed or oral communications, intimidate, or levy blackmail, or extort money, property or other valuable thing from, any person; ......  he, she, or they, so offending, shall be guilty of a misdemeanor." The action was tried as a statutory offense and will be so considered in our discussion, although there was proof that would have sustained the charge of extortion at common law. See 1 Trickett

on Criminal Law 288; Com. v. Miller, 94 Pa., Superior Ct. 499; Com. v. Saulsbury, 152 Pa. 554.

1. The appellant contends that there was insufficient evidence to establish his guilt. The preliminary question arises, should we consider all the evidence admitted under both bills against all the defendants, or only that part thereof which would have been admissible had this appellant been tried for extortion only. The evidence was properly admitted to sustain the charges against the defendants being tried. It supported the averments in the two indictments and there was no objection, except as to the testimony of one witness, but the same facts, to which objection was made, were testified to by other witnesses, without objection; and, therefore, assuming the objection was well founded, the rule applies that the admission of incompetent evidence cannot be assigned for error when the same fact has afterwards been established by other evidence: McCabe et al., v. Cannoe, 304 Pa. 497. There was neither a motion made to grant a separate trial to the appellant, nor was there a request that the statements of Harkins to the Garrods, hereinafter referred to, be not considered by the jury against the appellant in the extortion charge. When, as here, there are several co-defendants, the evidence admissible against one is not to be excluded on the ground that it may prejudice another: Fife v. Com., 29 Pa. 429, 437; Com. v. Parker, 294 Pa. 144, 155. We will, therefore, consider all the evidence in the record in determining whether the verdict should stand.

The facts disclose that Mrs. Casey, who was seeking a lawyer, was referred by Raul, a neuropath, to Bernstine, who prepared an information under which Mrs. Garrod was arrested for the crime of abortion. A hearing was set for August 26, 1929. Harkins, a stranger to Mrs. Garrod, appeared at the magistrate's office, at the instance of a mutual friend of Harkins

and Mrs. Garrod, to furnish bail. Harkins said that when he made inquiry as to the nature of the case, Bernstine replied, "That Garrod woman ruined my client . . . . . . they want $1000." At Harkins' request the case was continued until Wednesday, August 28th. Later the same day, Harkins called on Bernstine; then he found that Bernstine wanted $2500. Harkins said, "It is pretty steep, isn't it?" Bernstine replied, "Well, we are going to send it to court." The next night Harkins went to Mrs. Garrod's house and said, "It's terrible," that Bernstine was a bad man, a bad sort, and that he wanted $2500. Mrs. Garrod testified that although she had committed no offense she did not desire the notoriety and scandal of a public trial and, therefore, finally agreed to pay that sum. The husband of the accused woman testified that Harkins told him, "It looks pretty bad, it looks pretty rough. He has a couple of doctors that would swear against your wife and a couple of women who will swear she treated them."

The parties met at the magistrate's on the 28th, at which time the husband of Mrs. Casey was present. He testified: "Q. Did Bernstine say anything to you? A. He said he wanted to settle and I told him to let the case go for court. He said it is best to settle, he said he is the attorney and will give me the best advice, that's what I went to him for, advice in the first place. So I agreed to go by his advice. Then we got back to his office. Q. At whose instance did you sign it (statement), who asked you to sign it, who told you to sign it? A. Mr. Bernstine said it was necessary—said it was best to drop it, that it would cause publicity, and I agreed to sign it. He didn't ask me to sign it, I signed it with my own free will."

The first clause in this "statement" reads as follows: "Floyd Casey and Florence Casey hereby state that they refuse to proceed any further with the crim-

inal prosecution against Mrs. Sidney Garrod, 161 E. Roosevelt Blvd., Sur Charge: Criminal Abortion, now pending in the office of Magistrate John J. Grelis, preferred by us for the reason that we desire to avoid any publicity in the case and our desire not to incriminate ourselves in said criminal prosecution.'' The statement further recites that the sum so paid was a full settlement only of claims for damages and that that sum was not to be considered as a settlement of criminal prosecution. But no civil case had been instituted and as the charge, involving a felony, was immediately withdrawn, without seeking the approval of the court, it is very patent that the primary object of the payment of the money was the withdrawal of the criminal charge. The actions of the parties speak more persuasively than their words. Bernstine distributed the $2,500 by paying $1,000 to the Caseys, $300 to Harkins and $200 to Raul, and retained for himself the remainder. The Caseys testified that they signed "paid out slips" but did not know what these slips included, but Casey acknowledged that he was satisfied with the $1000 which he received. Harkins candidly stated that he did not know why $300 was paid to him as he had done nothing for Bernstine or the Caseys. He was only interested in Mrs. Garrod. Mrs. Casey said that Raul had prescribed some tonics for her but that she did not authorize the payment, either to Raul or to Bernstine, of the money they received.

Evidence was shown that a month later, another woman, claiming that abortion had been performed upon her, was brought also by Raul to Bernstine, and information made against Dr. Shriner, and, after three continuances, on the day before the date fixed for the last hearing, Dr. Shriner paid $1000. A similar paper as in this case was signed by a Doris Davis, the prosecutrix, and delivered to Bernstine, and there-

upon the charge was withdrawn without the court's consent. Of this money, Raul received $25.

It has been emphasized by the appellant that he had no personal contact with the Garrods until the time of settlement; that he was attempting to act in a proper manner and to the best interests of his client. The intimidation of Mrs. Garrod by placing her in fear of disgrace; protecting her from the publicity of this serious charge by withdrawing the prosecution upon the payment of $2,500; the insistence of the appellant to settle the prosecution against the wishes of the Caseys; failure to ask the approval of the court in the settlement of a felony; the amount received by Bernstine; and the way the remainder of the money was distributed, threw a suspicion around this transaction that might well have convinced the jury that there was a levying of blackmail: Com. v. Nathan, 93 Pa. Superior Ct. 193.

2. We find nothing in the objection to the charge of the learned judge of the lower court to justify criticism. He very clearly instructed the jury to the effect that it is not wrong for a lawyer and a private prosecutor to settle a case, if the settlement is not forced upon another by using a warrant of arrest and a prosecution as a means of intimidation; that if there is no intimidation, there is no extortion. There were no instructions that the Caseys had not the right to prosecute Mrs. Garrod. Nor do we find any error in the court's stating to the jury that whether or not an abortion was performed was immaterial in the case. It had no bearing on the issue they were trying. That was a collateral matter and was not for the jury's determination.

3. We have examined the objections raised to the answers to the defendant's third and fifth points submitted to the court and to the inquiry of the court asking Casey whether he was willing to take $1,000

for the ruination of his wife, but we find them without merit.

4. The assignments of error, thirteen to twenty, inclusive, complain that the Commonwealth was permitted to ask the defendant's character witnesses, on cross examination, whether they had heard of certain instances of the appellant's receiving money from clients for specific purposes and appropriating it to his own use, and as to other charges of irregular money transactions. It is perfectly proper to ask a witness, on cross examination, whether or not he has heard of certain specific offenses of a similar character charged against the defendant, not to show that the defendant was guilty of the other offenses, but for the purpose of ascertaining the opportunities, sources and extent of his knowledge of the reputation borne by the defendant to rebut the testimony of good character: Com. v. Brandler, 81 Pa. Superior Ct. 585.

After a careful examination of the entire record and due consideration to the able argument of counsel, we have concluded that the defendant had a fair trial and that no sufficient reason has been advanced to disturb the jury's conclusion.

The judgment is affirmed and the record is remitted to the court below and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.