## Commonwealth of Pennsylvania v. William Epps, Appellant.

*Murder—Homicide committed in the perpetration of a robbery—Evidence.*
On a trial for murder, evidence that the prisoner was seen on the night of the murder in the neighborhood of the deceased's residence; that on the same night he was in possession of property which he admitted having taken from the dwelling of the deceased; and that after his arrest, he con-

fessed the crime, is ample to show that the crime was committed in the perpetration of robbery.

*Criminal law—Murder—Confessions—Order of evidence.*

On the trial of an indictment for murder, where the commonwealth offers to prove a confession made by the prisoner to the officer who arrested him, the prisoner has no right to demand that he shall be first heard to testify that the confession was involuntary, before the officer is permitted to testify.

In Pennsylvania the prisoner has the right to examine fully the witness called by the commonwealth to establish the alleged confession; if it then appears that it was not voluntary it should be rejected without being heard; if it appears to have been voluntary then it should be received; if afterwards there be testimony contradicting the witness, then it becomes a question for the jury. Per DEAN, J.

*Criminal law—Murder—Robbery.*

Where a killing occurs in the perpetration of a robbery the statute fixes the degree of the crime, and it is immaterial whether or not it was to the interest of the prisoner to kill the victim he had robbed.

Argued Oct. 16, 1899.   Appeal, No. 312, Jan. T., 1899, by defendant, from judgment of O. & T. Phila. Co., March T., 1899, No. 437, on verdict of guilty of murder of the first degree. Before STERRETT, C. J., GREEN, MCCOLLUM, MITCHELL, DEAN, FELL and BROWN, JJ.   Affirmed.

Indictment for murder.   Before AUDENRIED, J.

At the trial when detective Geyer was on the stand, the following question was asked:

Mr. Finletter, of counsel for plaintiff: " Q. Did the prisoner make any statement to you about this matter, or in your presence ?   A. On our arrival at the city hall with Epps and Dodson—"

Mr. Chew, of counsel for defendant: I would like to know exactly what is going to be proved by this witness.   If there is any question of a confession of any sort to be proved by him I desire to object to it.

Mr. Finletter: I propose to show a confession.

Mr. Chew: In that case we would like to put the prisoner on the stand to show that anything that he might have said was brought forth involuntarily from him.

The Court: Your time to offer testimony has not yet come.

Mr. Chew: I always understood it to be the practice that in case any damaging evidence might be brought out which could

afterwards be stricken out for any reason—I do not know what the evidence is, but I do not want to run any risk; I want to be sure that the jury may not hear it, and I ask your Honor to hear the testimony of the prisoner. Mr. Finletter has just said that he proposes to bring in evidence a confession made by the prisoner to the witness. I request that the prisoner be put on the stand primarily before anything can be said by the witness that might influence the jury, which should afterwards be stricken out.

The Court: Overruled. Exception by defendant.

Under its offer the commonwealth then proved by detective Geyer that the defendant had been taken to Captain Miller's office in the city hall, immediately on his arrival from Richmond; that there a written statement made by Dodson was read to the prisoner; that after hearing said statement the prisoner confessed that he and Dodson had gone together to Mrs. Lawler's store on the night of the murder, and had stolen some eggs, shoes, money and a dress. [1]

Verdict of guilty of murder of the first degree. The prisoner appealed.

*Error assigned* among others was (1) rulings on evidence, quoting the bill of exceptions.

*Richard Vaux Buckley*, with him *Samuel Chew*, for appellant. —The involuntary confession of a prisoner is absolutely incompetent as evidence against him: Fife et al. v. Com., 29 Pa. 429; Regina v. Garner, 61 Eng. Com. Law Rep. 920; State v. Platte, 34 La. Ann. 1061; Com. v. Harman, 4 Pa. 269.

The question of the competency of a confession is a preliminary question of law to be decided by the court before admitting it to the jury: State v. Kinder, 96 Mo. 548; Com. v. Culver, 126 Mass. 464; People v. Fox, 121 N. Y. 449; State v. Platte, 34 La. Ann. 1061; People v. Soto, 49 Cal. 67; State v. Davis, 63 N. C. 580.

The court, having once wrongly admitted to the jury evidence of a confession which the defense has objected to and offered to prove incompetent, cannot later cure its error by leaving the question of its involuntary nature to the jury: State

v. Kinder, 96 Mo. 548; Jackson v. State, 83 Ala. 76; Biscoe v. State, 67 Md. 6.

*P. F. Rothermel, Jr.*, district attorney, with him *T. D. Finletter* and *Samuel A. Boyle*, assistant district attorneys, for appellee, were not heard.

OPINION BY MR. JUSTICE DEAN, November 6, 1899:

The defendant, along with one Samuel Dodson, was charged with the murder of Mary Anne Lawler at her house on Tasker street, Philadelphia, on January 30, 1899. The deceased had been strangled in the attempt to rob her. At an early stage in the trial, the commonwealth called as a witness detective Geyer, who testified to a confession of the crime to him by the prisoner after his arrest. It was also testified by Irene Henderson, the prisoner's mistress, and Mamie Henderson, her sister, that the night of the murder he brought to their house certain property which he admitted he had taken from the dwelling of the deceased, and that the next day had said to them he "had not known he had done it," that is, killed Mrs. Lawler, until he saw it in the newspaper. Other witnesses testified to seeing him in the neighborhood of Mrs. Lawler's house about 9 o'clock of the night of the murder, and that he brought home a woman's skirt similar to one worn by Mrs. Lawler. It was further shown that the prisoner fled to Richmond, Va., soon after the death of Mrs. Lawler became known. On this and other evidence, the jury found the prisoner guilty of murder of the first degree, and he was sentenced to death accordingly. We have this appeal with eight assignments of error. The prisoner's defense rested on an alibi, which the jury did not credit; the evidence adduced by the commonwealth was ample to show that the prisoner had murdered deceased in the perpetration of a robbery. There is nothing in any of the assignments of error calling for notice, except the first and second, which complain of the admission of the testimony as to the confessions. It is alleged the confession to detective Geyer was involuntary, and therefore, inadmissible. There is no doubt about the law applicable to the question. In one of the earliest cases, Commonwealth v. Dillon, 4 Dall. 117, Chief Justice McKEAN said: "The true point for consideration is, whether the prisoner has

falsely declared himself guilty of a capital crime." And if an inducement be held out or a threat made calculated to prompt the prisoner to falsehood, then the confession must be excluded. When detective Geyer was on the stand, after stating he had arrested the prisoner at Richmond and brought him to Philadelphia, he was asked by the district attorney whether while under arrest the prisoner had made any statement to him about the matter; this for the purpose of showing a confession of guilt; to this, counsel for the prisoner objected, and asked leave of court to call the prisoner as a witness before the court, to show that the alleged confession was involuntary. The court ruled that the time to call the prisoner had not yet come, meaning that he could be called later in the trial. To this ruling counsel for prisoner excepted. It is now argued, this ruling was error; that whether the confession was voluntary was solely a question for the court, and that therefore, preliminary to receiving the evidence of the detective, it was the duty of the court to hear the testimony of the prisoner, from which the court might have decided the confession was involuntary.

Detective Geyer testified to the confession, and that it was wholly voluntary; that he had distinctly told the prisoner before he made it that he did not want to hear it unless made voluntarily; that he said nothing to excite hope or fear. The prisoner said, "I might as well tell you all I know," then gave to the officer a detailed statement of the crime. The prisoner's counsel subjected the witness to a most rigid examination, with the purpose of showing that the confession was not voluntary; but failed to shake his testimony in the least. The court declined to hold that the confession was involuntary. The question arises, whether the court should have first heard the testimony of the prisoner before permitting the officer to testify? For refusing so to do is the error complained of. The practice in this state is well settled. If it appear from the testimony of the witness that the alleged confession was not voluntary it must be excluded, and the court must at once so decide; but if voluntary, the witness can testify to it; and if subsequently, in the course of the trial there be evidence tending to contradict the witness, then the question of credibility is for the jury, who must be instructed that if not voluntarily made they must wholly disregard it. In Commonwealth v. Harman, 4 Pa. 269,

and Fife et al. v. Commonwealth, 29 Pa. 429, it appeared without doubt, when the confession was offered, that it was not voluntary; we held not only that it should have been excluded, but should not have been heard. But in Rizzolo v. Commonwealth, 126 Pa. 54, the confession was made to the officer by the prisoner while under arrest. The officer testified that it was wholly voluntary. Judge RICE, now president of the Superior Court, was the trial judge; he admitted the testimony; afterwards, when the defense was heard, the prisoner to some extent contradicted the officer; their credibility was submitted to the jury, with instructions, to disregard the confession if they believed it involuntary. The admission of the testimony as to a confession was one of the assignments of error; we overruled the assignment. In Commonwealth v. Van Horn, 188 Pa. 143, the prisoner's twenty-seventh assignment of error is in substance the one made here; our Brother GREEN, speaking for the Court, saying: " When the commonwealth offered to prove a voluntary confession made by the prisoner, his counsel applied to the court for permission to show that a previous confession had been obtained by undue means. The court refused the application and the testimony proceeded in the usual way. If the application had been granted, it could not have prevented the admission of the commonwealth's evidence, and the only result would have been a question of credibility, as between the prisoner and the officer who testified to his voluntary confession." See also Commonwealth v. Shew, 190 Pa. 23. While some of the cases from other states, cited by counsel for the prisoner, seem to hold that it is the sole duty of the court to at once decide before hearinfg the conession, from the conflicting evidence of witnesses, whether the confession was voluntary, the settled practice in this state is otherwise. The prisoner has here the right to examine fully the witness called by the commonwealth to establish the alleged confession; if it then appear that it was not voluntary, it should be rejected without being heard; if it appear to have been voluntary, then it should be received; if afterwards there be testimony contradicting the witness, then it becomes a question for the jury.

There was not the semblance of error in admitting the testimony of the two Henderson women as to the confession made by the prisoner to them. They were not officers who had power

and influence which might have induced the prisoner to expect favor. There is nothing of merit in any of the complaints made by prisoner; he had an eminently fair and impartial trial and the verdict of guilty of murder of the first degree was fully warranted by the testimony and the statute; whether it was his intent to kill the victim he had robbed was wholly immaterial; the killing occurred in the perpetration of a robbery by him; and the statute, therefore, fixes the degree of the crime.

The judgment is affirmed, and it is directed that the record be remitted to the court below that the sentence may be carried into execution according to law.