[No. 1775]

# THE STATE OF NEVADA, RESPONDENT, *v.* GEORGE WILLIAMS, APPELLANT.

1. GRAND JURY—CHALLENGE TO THE PANEL.
   The statutory causes of challenge to the panel of a grand jury specified in the criminal practice act of 1861 (Stats. 1861, p. 454, c. 104), sec. 179, do not apply to the changed method of drawing grand jurors according to Comp. Laws, 3869.

2. GRAND JURY—ATTENDANCE.
   It is not necessary to have the full venire of twenty-four present according to Comp. Laws, 3869, before a grand jury of seventeen is selected; the provisions in the statute for a larger venire than the grand jury selected being directory.

3. CRIMINAL LAW—EVIDENCE—JUDICIAL NOTICE.
   Courts take judicial notice of periods within the calendar.

4. HOMICIDE—INDICTMENT—TIME OF DEATH.
   An indictment charging that a mortal wound was inflicted on a date about four months before the finding of the indictment, and that deceased died from it in the meantime, sufficiently charges that death occurred within a year and a day after the infliction of the wound.

5. CRIMINAL LAW—APPEAL AND ERROR—REVIEW—HARMLESS ERROR.
   The admission of the hearsay evidence as to what was done with the body of deceased after it was found by the witness is harmless.

6. CRIMINAL LAW—EVIDENCE—OPINION—TIME.
   Time is provable by the opinion of a witness testifying from his recollection.

7. CRIMINAL LAW—TRIAL—RECEPTION OF EVIDENCE.
   The time and place of a remark made by the accused having been fixed as the one occasion on which he came to a camp when the snow fell, the foundation for proof of the remark was sufficient.

8. WITNESSES—EXAMINATION—LEADING QUESTIONS.
   It is discretionary to allow leading questions on the direct examination when the witness is unable to understand otherwise.

9. CRIMINAL LAW—APPEAL AND ERROR—REVIEW—HARMLESS ERROR.
   Error in a question to a witness, and a statement of the court in the presence of the jury implying that a confession had been made, is cured as soon as the fact is proved by the testimony of the witness and the accused.

10. CRIMINAL LAW—TRIAL—REMARKS OF JUDGE—COMMENTS ON WITNESSES.
    A remark of the court in ruling on the admissibility of leading questions that they are sometimes necessary to elicit the truth is not objectionable as asserting that the witness is truthful and creditable.

11. CRIMINAL LAW—TRIAL—PROVINCE OF COURT AND JURY—DETERMINATION ON ADMISSIBILITY OF CONFESSIONS.
    The question of the voluntariness of a confession is to be decided primarily by the court after hearing all the evidence offered by both sides upon that issue, and, if the confession is ruled to be admissible, it is not improper to submit all the evidence to the jury to be considered in determining the weight to be given to the confession.

Opinion of the Court—Talbot, J.

12. CRIMINAL LAW—EVIDENCE—CONFESSIONS—PRELIMINARY EVIDENCE.
    The accused is entitled to introduce evidence to rebut the claim of
    the state that his confession is voluntary before the court determines
    whether it is to be submitted to the jury.
13. CRIMINAL LAW—TRIAL—RECEPTION OF EVIDENCE—PRESENCE OF JURY.
    If it cannot be easily shown that a conversation sought to be proved
    was voluntary, without leading the jury to surmise that a confession
    has been made, they ought to be excused until the court can hear the
    evidence and determine whether the confession ought to be submitted
    to them.
14. CRIMINAL LAW—ARRAIGNMENT AND PLEAS.
    The entry of a plea of not guilty in behalf of the accused by the
    clerk upon the order of the court after defendant's refusal to plead is
    equivalent to a plea of not guilty.
15. CRIMINAL LAW—APPEAL AND ERROR—PRESUMPTIONS.
    All presumptions are in favor of the regularity of the action of the
    trial court.

APPEAL from the District Court of the First Judicial District of the State of Nevada, Esmeralda County; *F. P. Langan*, Judge.

George Williams was convicted of murder, and he appeals.
**Affirmed.**

The facts sufficiently appear in the opinion.

*Clarence C. Ward*, for Appellant.

*R. C. Stoddard*, Attorney-General, and *L. B. Fowler*, Deputy Attorney-General, for Respondent.

By the Court, TALBOT, J.:

On behalf of the appellant it is claimed that the district court erred in impaneling the grand jury, in denying defendant's motion to quash the indictment, in overruling his demurrer, in admitting designated testimony offered on behalf of the state, in making certain remarks and stating before the jury facts and conclusions concerning the evidence, in submitting to the jury a question of law which should have been decided by the court, and in proceeding with the trial without a plea being entered by or for the defendant.

The challenge to the panel of the grand jury was upon the grounds specified in section 179 of the criminal practice act passed in 1861. (Stats. 1861, p. 454, c. 104.) It is evident

that these causes of challenge were intended to apply to the statutory method of drawing grand jurors at that time, but which since have been superseded. (*State* v. *Collyer*, 17 Nev. 280.) The grand jury was drawn in compliance with the statute now in force, section 3869 of the Compiled Laws, passed in 1873 and amended in 1879 and 1881.

Some of the grounds on which defendant moved to quash the indictment are similar to those on which he objected to the impaneling of the grand jury, and some of them are not sustained by the record. Of the twenty-four persons selected by the district judge and the county commissioner to be summoned as grand jurors only twenty-three were served by the sheriff, in whose return it was stated that one of them was not found. It is said that it was necessary to have the whole twenty-four present in court before seventeen could properly be selected by the judge to act as a grand jury.

Section 3869 of the Compiled Laws provides: "* * * A list of the names so selected as grand jurors shall be made out and certified by the officers making such selection and be filed in the clerk's office, and the clerk shall immediately issue a venire, directed to the sheriff of the county, commanding him to summon the persons so drawn as grand jurors to attend in court at such time as the judge may have directed; and the sheriff shall summon such grand jurors, and out of the number so summoned the court shall select seventeen persons to constitute the grand jury. If from any cause a sufficient number do not appear, or those who do appear are excused or discharged, an additional number, sufficient to complete the grand jury, shall be selected from the jury list by the judge and clerk and summoned to appear in court at such time as the court may direct." This language seems to sanction the practice long prevailing in this state, which is most convenient without being prejudicial to the rights of the defendant, of allowing the court to designate seventeen to constitute the grand jury from those present of the twenty-four previously selected for the venire, although less than that number be in court. By reason of absence, sickness, or other cause, it may be impossible to secure service upon, and the attendance in court of, the full twenty-four which had been

selected and placed upon the venire, and wisely the statute allows the court to select the necessary seventeen to constitute the panel from the number present.

The failure to have the full twenty-four in court is not designated in the statute as a ground for challenging the panel nor for quashing the indictment, and so long as the seventeen required to constitute the grand jury were present and were selected by the court, and none of them were subject to individual challenge or disqualification, it would seem that defendant could not be prejudiced because a part of those in excess of this number did not appear. The fact that the sheriff returned that one of the venire of twenty-four had not been found does not indicate that there was any purpose on his part to omit any who could have been served. It has been held that, where the court sustains a challenge by the state to a trial juror and excuses him without any cause, no prejudicial error results, for the defendant is only entitled to a fair jury and not to have any particular person on the panel. (*State* v. *Larkin,* 11 Nev. 315; *State* v. *Buralli,* 27 Nev. 49.) The same reasoning would be applicable to the omission from the grand jury of any one named in the venire, and the personnel of the grand jury is not of such vital importance to the defendant as that of the trial jury. Surely, there is no more necessity for having the full venire of twenty-four present before a grand jury of seventeen is selected than for having the full venire of fifty or one hundred or any number of trial jurors present before twelve disinterested and duly qualified can be impaneled to serve as a trial jury.

Among the decisions holding that statutes providing for venires for a larger number than are necessary to constitute a grand jury are, in their nature, directory, and that the absence of part of them does not vitiate the proceedings of the grand jury are: *Commonwealth* v. *Wood,* 2 Cush. (Mass.) 149; *Mesmer* v. *Commonwealth,* 26 Grat. (Va.) 976; *State* v. *Brainerd,* 56 Vt. 532, 48 Am. Rep. 818; *Beasley* v. *People,* 89 Ill. 571; *People* v. *Hunter,* 54 Cal. 65; *People* v. *Simmons,* 119 Cal. 1, 50 Pac. 844.

The demurrer was based on the omission of any direct allegation that the deceased died within a year and a day from the time he was shot. It is alleged in the indictment that

the defendant "on the 5th day of November, A. D. 1907, or thereabouts, * * * at the County of Esmeralda, State of Nevada, did then and there, wilfully, feloniously and unlawfully, with malice aforethought, deliberately and with premeditation, kill and murder one J. Barney Griffin, * * * by shooting, etc., thereby inflicting a mortal wound, * * * from which said mortal wound said J. Barney Griffin died on a date to the grand jury unknown, before the finding of this indictment."

The indictment was found on the 21st day of February, 1908. It is said that the state could have proved that the shooting occurred on some other date than the one alleged; and this is true. If the proof had indicated that the wound was inflicted more than a year and a day before the finding of the indictment, it would have failed to establish murder, but it followed the allegations closely, and these were sufficient upon demurrer regardless of the evidence introduced later. Considering the charge that the mortal wound was inflicted on a date about four months previous to the finding of the indictment and that the deceased had died from it in the meantime, a simple mathematical calculation which cannot be classed as an inference would indicate that the death occurred within four months after the infliction of the wound. (1 Bish. Crim. Procedure, 391; *State* v. *Champoux*, 33 Wash. 339, 74 Pac. 557; *Bowen* v. *State*, 1 Or. 270, and other cases cited in the brief.) Courts take judicial notice of periods within the calendar, and are capable of making such mathematical computation. The indictment contains all that is provided in the statutory form of one for murder and more. Section 244 of the criminal practice act provides: "No indictment shall be deemed insufficient, nor shall the trial, judgment or proceedings thereon be affected by reason of any defect or imperfections of matters of form which shall not tend to the prejudice of the defendant."

As illustrative of others it will be sufficient to refer to a part of the exceptions taken by the defendant under his specification that the court erred to his prejudice in admitting incompetent, irrelevant, and immaterial testimony offered by

the state.    The following glimpse of the proceedings on the trial shows the nature of these exceptions:

In the testimony of Fred Volmer:  Q. After seeing the body of Barney Griffin at the point stated by you, in the manner as testified to, what, if anything, was done with it?

Mr. Ward—Objected to unless qualified by the statement as to whether the witness knows or not.

Objection overruled.    Exception.

Q. What time of the morning did Barney Griffin and the other party leave, if they left your cabin?    A. I should think something about before noon some time, from 9 to 11.

Mr. Ward—Objected to as something he should think and not a statement of facts.

Objection overruled.    Exception.

In the testimony of War Dance Johnson:    Q. What did the defendant, this Indian here, say to him when he came to his camp?

Mr. Ward—We object to that unless the time is fixed when.

Q. At that time he was there?

Mr. Ward—He designated it "when the snow fell"; he has not specified definitely.

The Court—The witness testified that he only saw him once.    The testimony must necessarily be confined to that particular time.

Objection overruled.    Exception.

Q. Ask him if defendant unscrewed that and took it off.

Mr. Ward—We object as leading.

Objection overruled.    Exception.

Q. Was the defendant on the summit when he saw the train?

Mr. Ward—Objected to unless he is able to state of his own knowledge whether he knows he was on the summit or not.

Objection overruled.    Exception.

Q. When George Williams left his camp that night, did he watch to see where he went?    Witness—It was dark, no moon.

Q. What did he say about the horse?    Interpreter—He said it was dark and he couldn't see him, but he went down that way (shows) from his camp.

Q. Did he follow his tracks out when it got light?

Mr. Ward—Objected to as leading.

Objection overruled. Exception.

Q. Ask him, Pete, if he saw man tracks made by shoes or boots. Interpreter—Yes, he saw man tracks.

Q. How far from this camp did the man's tracks go; how far did he .follow them? Interpreter—He got on the horse right where he had it tied.

Q. How far was that 'from this camp'—the length of this room—ask him?

Mr. Ward—Objected to as leading.

Objection overruled. Exception. * * *

Q. Tell us what did he find, what did he see after Fred Bugler told him something? Interpreter—Said he went out and showed him the tracks.

Q. What kind of tracks were they at first; ask him if he saw any man's tracks?

Mr. Ward—Objected to as leading.

Objection overruled. Exception.

The Court—Ordinarily, the court does not permit leading questions, but there are times and occasions when it is absolutely necessary that leading questions be asked in order to elicit the truth. I think this is one of those cases and for that reason I will permit the question.

As to the objection to the first question set out above, it would appear from the testimony of the witness that he knew of his own knowledge what was done with the body at the time to which the question related, which was the one when he and the others were at the place where the remains of the deceased and his companion were found in the mountains. In any event his answer, if it had been merely based on hearsay was not in reference to anything which could have injured the defendant. It was not improper for the witness as a matter of recollection to say that he thought the time was from 9 to 11 o'clock, and the objection to it as not being a statement of facts was properly overruled, time being provable by opinion. (*Hardy* v. *Merrill*, 56 N. H. 241, 22 Am. Rep. 441; Wigmore on Evidence, sec. 1977; Lawson, Exp. & Opin. Evidence, 460, and cases there cited.)

Nor was the objection that the witness had not specified definitely the time when he and the defendant came to the camp well taken. It was not necessary to specify the time and place when the defendant made the statement as is required in a question laying the foundation for the impeachment of a witness; and the time and place had already been fixed as the one occasion upon which the defendant came to the camp when the snow fell. Nor can we say that the court abused its discretion in allowing leading questions to be put to Indian witnesses, who did not well comprehend, for it is sometimes discretionary to allow leading questions on the direct examination when it appears that the witness is unable to understand otherwise, as well as when he is hostile. (Greenleaf on Evidence, sec. 435.) It was permissible for the court to receive the testimony of the Indian who had acted as interpreter. (Greenleaf on Evidence, sec. 432.)

The objection was well taken to the question asked by the district attorney: "Where did the statement and confession take place, and when?" Certainly, the question implied a confession carrying an acknowledgment of guilt at a time when there was no proof that one had been made, and the exception was placed on this ground. The same is true of the statement of the court: "I do not think it necessary to remove the jury at the present time; I would suggest that the district attorney had better lay the foundation for the introduction of the confession." But the error under the question and in the statement of the court implying that a confession had been made, when none had been proven, was cured so far as any prejudice could result to the defendant, when later the witness was allowed to testify that a confession was made, and the defendant himself took the stand and denied that the confession was voluntary, but acknowledged that one had been made to the witness. (*State* v. *Johnny*, 29 Nev. 220.) The objection against a trial judge stating facts before a jury does not apply to those which are admitted; and if the judge states facts which are not already proven, the error or injury is cured or removed as soon as the facts stated are admitted.

It is argued that the statement of the court that there are occasions when it is absolutely necessary that leading ques-

tions be asked in order to elicit the truth, and that the judge thought that was one of those cases, amounted to an assertion that the witness was truthful and creditable and, therefore, it was erroneous. Evidently, it was the intention of the court to announce to counsel that he would permit leading questions in order to enable the witness to understand and give answers, which would relate the facts or truth. We do not think that the court intended, nor that the jury could infer, from the language used that the trial judge considered the witness who was testifying either creditable or unreliable. If we depart from the evident purpose of the statement, which was a ruling on the permissibility of leading questions, it would rather tend to discredit the witness or to carry the suggestion that the truth could not be elicited from him by the usual direct examination. Consequently, the possible tendency of the remarks to discredit the state's witness could not be unfavorable to the defendant. It is urged that the court erred in submitting to the jury evidence as to whether the confession made by the defendant was voluntary, and that this was a question for the determination of the court.

During the trial the under sheriff was placed upon the stand by the state to prove that a confession had been made by the defendant while he was confined in the county jail. Defendant's counsel made objection, and urged at different times that it was the duty of the court to hear evidence in the absence of the jury and determine whether a voluntary confession had been made. The court refused a motion to have the jury excluded, and an exception was taken. The witness proceeded to testify that without any promise of reward or threat of punishment the defendant had told how he had shot J. Barney Griffin and his companion, how he had opened their pockets and taken their watches, and chopped boughs to cover their bodies, and went away to Mono Lake. The details of the defendant's confession were stated by the witness before the jury without any direct objection, and his attorney proceeded to cross-examine the witness as to whether there had been any threat of punishment or offer of reward to induce the making of the confession. Thereupon the state rested its case. At the further request of defendant's counsel

the court excluded the jury while the defendant was placed upon the stand, and testified that in securing the confession the deputy sheriff had drawn a pistol and threatened to kill him if he did not tell the particulars in relation to the shooting of the deceased. The defendant's testimony was in the nature of an admission that he had made the confession, but was a denial that it had been given voluntarily.

After the attorney had further argued that the confession be excluded, the court said: "Two witnesses have testified that the defendant has made a confession to them; they have both testified that the confession was voluntary, without any hope of reward or threat of punishment, and now the defendant takes the witness stand and denies—at least, he testifies—that there was a promise of reward or threat of punishment. It is submitted to the court upon voluntary evidence, and the rule of necessity must be that the evidence would be admissible to go before the jury, because, unless that was the rule, every time the defendant in a criminal case made a confession, no matter how voluntarily it was made, and afterwards denied it, the court would then be called upon to determine the weight to give the evidence of the various parties. As I stated, the rule undoubtedly is that the court might hear the evidence and exclude the statements made by the defendant as to whether it was voluntary, and it seems to me the absolutely fair rule would be for the entire matter to go before the jury. This witness can testify to the circumstances and conditions under which the confession was made, then it will be a matter for the jury to determine which of the parties are telling the truth. As I stated before, I am prepared to rule upon the matter now. I am willing to go further, and allow the defendant to state the conditions and circumstances surrounding the alleged confession to go before the jury which would be of direct and positive benefit to the defendant. However, if you don't want that, I will exclude it from the jury."

Counsel then said: "If your honor rules that this is a matter that goes to the jury, we shall insist that every part of it go to the jury. Your honor has permitted testimony on the other side to go to the jury, and, in support of our motion to strike, we tender this witness for the purpose of convincing

the court that the testimony should be stricken out, and if
your honor rules now that it should not be stricken out, but
should go to the jury, then we insist upon both sides being
heard before the jury."

It will be observed that counsel relied more upon his con-
tention in the lower court, which was in accord with his
argument here, that it was the duty of the trial judge in
the absence of the jury to hear the evidence and determine
whether the confession was voluntary, than upon his request
to have all the evidence in relation to the confession sub-
mitted to the jury, which he made after his motion to exclude
the jury had been denied while the testimony was being given
in behalf of the state in regard to the confession, and his
motion to have the jury excluded while the defendant was
testifying in regard to the confession had been granted, which
latter request was more in consonance with the views expressed
by the court. As no objection or exception was taken to the
evidence of the confession itself, and the defendant admitted
that he had made it, no question of error in that connection
is before us; but we must determine whether the court acted
improperly in regard to the testimony relative to the volun-
tariness of the confession. It is claimed that it was error to
submit this evidence to the jury. This would be a more
serious proposition, if the record did not indicate that there
was substantial evidence from which the judge apparently
concluded that the confession was voluntary, and that he was
willing to give the defendant the benefit of any doubt by
letting the testimony go to the jury.

If the defendant's contention that it is the duty of the court
to determine whether the confession was voluntary be con-
ceded, and the court found that there was evidence to indicate
that it was voluntary, although the testimony was conflicting,
and thereupon allowed proof of the confession to go to the
jury, the submission to the jury of the conflicting evidence as
to whether the confession was voluntary would be beneficial
rather than prejudicial to the defendant, and consequently no
ground for reversal. The different expressions made by the
district judge indicated that the testimony on the part of the
state to the effect that the confession was voluntary was

deemed by him sufficient to allow the confession to go to the jury, whether the preliminary question regarding its admissibility was passed upon by him, or the jury were left to determine whether they believed it was voluntary, and reject the confession if they believed it was not voluntary.

It appears that the judge concluded that by the weight of the evidence the confession was shown to be voluntary, but that he was ready to submit the conflicting testimony in this regard to the jury, which would be more favorable to the defendant. We are unable to see that this was prejudicial error, even under the rule that the judge is first to determine whether the confession is voluntary, or that he could not hear the evidence without excluding the jury, providing the testimony were given so it would not be detrimental to the defendant if the confession were not finally admitted. The circumstances' proven were apparently conclusive of defendant's guilt regardless of the confession, so that the omission or any mistake in its admission probably would not have changed the verdict.

At common law, in many of the states and in some of our district courts, it has long been the rule, as stated in section 219 of Greenleaf on Evidence, that if seasonable objection has been made the court must be satisfied that the confession is voluntary before allowing it to be submitted to the jury. On the trial, the learned district judge recognized this rule, but said that some of the later and better reasoned cases have a tendency to submit to the jury all the evidence as to whether the confession was voluntary. There is a lack of harmony among the decisions which have not followed the original rule.

The English cases down to the year 1852 have been reviewed in *Reg.* v. *Baldry*, 12 Eng. Law & Eq. 590. Lord Campbell stated the rule to be that "if there is any worldly advantage held out, or any harm threatened, the confession must be excluded." Parke, B., said: "By the law of England, in order to render a confession admissible in evidence, it must be perfectly voluntary; and there is no doubt that any inducement, in the nature of a promise or threat, held out by a person in authority, vitiates a confession. The decisions to that effect have gone a long way. Whether it would

not have been better to have left the whole to go to the jury, it is now too late to inquire; but I think there has been too much tenderness towards prisoners in this matter. I confess that I cannot look at the decisions without some shame, when I consider what objections have prevailed to prevent the reception of confessions in evidence; and I agree with the observation that the rule has been extended quite too far, and that justice and common sense have too frequently been sacrificed at the shrine of mercy."

In the note to section 219 of Greenleaf on Evidence (15th ed.) it is stated: "In Massachusetts the rule has varied. In the earlier cases it was considered a question for the judge. (*Chabbock's Case*, 1 Mass. 144; *Comm.* v. *Taylor*, 5 Cush. 606; *Comm.* v. *Morey*, 1 Gray, 461.) Then, in several cases where the question of inducement was a complicated one, the whole evidence was submitted to the jury, with instructions that, if they were satisfied that there were such inducements, they should disregard and reject the confession. (*Comm.* v. *Piper*, 120 Mass. 185; *Comm.* v. *Smith*, 119 Mass. 305; *Comm.* v. *Cullen*, 111 Mass. 436; *Comm.* v. *Cuffee*, 108 Mass. 285.) But in a later case (*Comm.* v. *Culver*, 126 Mass. 464) the court has brought the practice back to the original rule, leaving the question of the admissibility of the evidence entirely to the court, and its weight to the jury. In a still later case, the court in Massachusetts say: 'When a confession is offered in evidence, the question whether it is voluntary is to be decided primarily by the presiding justice. If he is satisfied that it is voluntary, it is admissible; otherwise, it should be excluded. When there is conflicting testimony, the humane practice in this commonwealth is for the judge, if he decides that it is admissible, to instruct the jury that they may consider all the evidence, and that they should exclude the confession if, upon the whole evidence in the case, they are satisfied that it was not the voluntary act of the defendant.' (*Comm.* v. *Preece*, 140 Mass. 276, 5 N. E. 494. And it seems that there is a tendency at the present time in some states to leave the question whether the confession was voluntary or not to the jury."

Prof. Wigmore at section 861 of his Work on Evidence

states that five distinguishable attitudes are found and represented in the rulings relating to the admissibility of confessions, and that "in comparatively recent times the heresy of leaving the question to the jury has made rapid strides," and that the original English rule that the prosecution must show that the confession was voluntary is accepted in most of the courts. At page 993 he says: "In determining the admissibility, (1) the judge must hear the defendant's evidence (including evidence from cross-examination of the prosecution's witnesses) upon the issue of voluntariness; although under the heterodox rule this could be logically dispensed with; (2) the jury, during the hearing of this evidence, may be withdrawn, as is proper during all proof and arguments upon questions of admissibility　*　*　*; (3) but, when a confession is ruled to be admissible, the same evidence and all other circumstances affecting the weight of the confession may be introduced for the jury's ultimate consideration."

Among the cases holding that previous to admitting the alleged confession in evidence there should be a preliminary inquiry as to its voluntariness, in which the burden is on the prosecution to show that it was freely made, are: *State* v. *Grover*, 96 Me. 363, 52 Atl. 757 (1902); *State* v. *Young*, 52 La. Ann. 478, 27 South. 50 (1899); *People* v. *Miller*, 135 Cal. 69, 67 Pac. 12 (1901); *Green* v. *State*, 96 Md. 384, 54 Atl. 104 (1903); and cases cited in 12 Am. Cr. Rep. at page 284.

In *Comm.* v. *Antaya*, 184 Mass. 326, 68 N. E. 331 (1903), it was held that the question of the voluntariness of a confession is to be decided primarily by the presiding judge. If he is satisfied that it is voluntary, it is to be admitted, but otherwise, rejected; but if admitted, the jury may disregard it if they are not satisfied that it is voluntary.

In Pennsylvania it has been held that the court need not hear the evidence of the defense before admitting the confession, but such evidence may afterwards be given, and then it becomes a question for the jury to determine as to whether or not the confession was voluntary. (*Comm.* v. *Epps*, 193 Pa. 512, 44 Atl. 570.)

In *State* v. *Cross*, 72 Conn. 722, 46 Atl. 148, the court stated: "The trial court, after hearing all the testimony as to the

circumstances attending the declaration or admissions of the accused, finds that they were made freely and voluntarily, and that the defendant was not induced to make them by any threats, promises, or inducements made to him by any one. This finding is upon a preliminary question of fact. The conclusion is drawn from the conflicting testimony, and may be correct or incorrect, according to the credit given to the witnesses. We cannot review such finding. Whether, under these circumstances, the declarations should have been excluded on the ground that they were of little weight, or liable to be untrue, or that their admission would be, on the whole, unfair to the prisoner, was a matter of discretion with the trial court, and its exercise is no ground of error unless this court can see plainly that the discretion was abused. * * * The trial court, under our practice, may properly exclude an admission of this kind if deemed of little weight, although our policy has more recently drifted towards a larger trust, in the jury's discrimination in respect to the weight of relevant testimony, as in the case of parties in interest."

In *Kirk* v. *Territory*, 10 Okl. 46, 60 Pac. 797, it was said in the opinion: "It is next contended that the court erred in permitting the testimony to determine the competency of confessions to be given in the presence of the jury. It is a well-settled rule of law that the question of the competency of confessions is one for the court, and should be determined preliminarily to allowing the confession to go to the jury. The authorities are not harmonious upon the practice. We think the correct practice and the one sustained by sound reason and weight of authority is that when testimony is offered to prove a confession, and objection is made to the competency of the evidence, the court should withdraw the jury, and hear all the evidence offered on the objection, both for and against the competency, and decide the question in the absence of the jury. If the court holds the confessions are not proper to be shown, then no prejudice can result from such action. On the other hand, if the court holds the confessions admissible, then the jury should be recalled, and, if the defendant desires, all the evidence relating to the competency of such confessions, the circumstances under which

they were given, the condition of mind of the defendant, and all other facts affecting or tending to affect the weight or credit of such confessions, should be permitted to go to the jury. In the case at bar no prejudicial error was committed by the trial court in hearing the evidence on the competency of the confessions in the presence of the jury. When the court decided that the confessions were competent to be shown, any error of hearing the matter before the jury was cured. The jury had a right to this testimony, not for the purpose of passing on the competency of the confessions, but for the purpose of determining what weight or credit they would attach to them. Had the court, after hearing the testimony on the competency of the confessions, decided that they were not proper to be shown, then error might have been predicated upon the improper evidence before the jury."

It is only fair to an accused person on trial not to allow all confessions, including those which apparently have been extorted by promises, threats, or coercion, to be thrown broadcast before the jury. To us it seems better, if timely objection is made, to first hear testimony regarding the voluntariness of the confession and not to submit the confession to the jury, unless there is evidence that it is voluntary which the court believes warrants its submission to the jury; and then if the confession goes to the jury, it would not be improper, and certainly not prejudicial to the defendant, for the trial judge, if he thinks best, to submit the evidence to the jury, regarding the voluntariness of the confession, if he believes that this evidence raises any considerable doubt as to whether the confession was voluntary. The defendant should be allowed to introduce any evidence he offers tending to rebut the claim or testimony of the state that the confession is voluntary before the court determines whether it is to be submitted to the jury. (*State* v. *Hill*, 65 N. J. Law, 626, 47 Atl. 814; *Jackson* v. *State*, 83 Ala. 76, 3 South. 847; *Redd* v. *State*, 69 Ala. 255; *Rufer* v. *State*, 25 Ohio St. 464.)

Ordinarily, it would seem to be unobjectionable and more convenient for the court to hear the testimony regarding the voluntariness of the confession without excluding the jury, if the questions can be put and answered in such a way as not

to have them imply that a confession has been made, as by asking whether any threats or offers or promises were made to the defendant to induce him to make the statements regarding the offense, but if it cannot be easily shown that the conversation sought to be proved was voluntary without leading the jury to surmise that a confession had been made, it would be better to excuse the jury until the court could hear the evidence and determine whether the confession ought to be submitted to them, and then if the court believed the confession was voluntary, but that the evidence relating to its voluntariness was so conflicting as to leave a serious doubt as to whether the confession was voluntary, it would not be improper for the court in its discretion to allow all this evidence to go before the jury for the benefit of the defendant, and for the jury to consider in determining the weight to be given to the confession.

The specification that the court erred in proceeding with the trial without a plea being entered is not supported by the record. After reciting that the motion to quash the indictment and demurrer had been overruled, the minutes of the court state: "Thereupon the defendant was asked if he pleaded guilty or not guilty to the offense charged in the indictment. Upon the advice of counsel defendant remained mute. Whereupon the court ordered the clerk to enter the plea of not guilty to the offense charged in the indictment." At the close of the reading of the indictment to the jury at the beginning of the trial, the clerk said: "At the time of the arraignment, the defendant stood mute, and the court had the order entered as not guilty to the offense charged in the indictment." Thereupon the court stated: "So the jury will understand, I will explain the matter to them. The defendant at the time he was arraigned to interpose his plea in this particular case stood mute and would not enter a plea, and under the law the court thereupon ordered the clerk to enter a plea of not guilty in his behalf."

Other objections are made in relation to which the facts are neither shown nor negatived in the statement, and as to them the presumptions are in favor of the action of the court, under the rule through many cases in this state from *State* v.

Points decided

*Kelly*, 1 Nev. 226, down.    In some instances no grounds for the objection and exception were stated to the court as required. (*McGurn* v. *McInnis*, 24 Nev. 370, and other cases.)

We find no error prejudicial to the defendant.    The judgment is affirmed, and the district court is directed to make and enter an order requiring the warden of the state prison to execute the judgment carrying the death penalty at a specified time as required by law.