## Commonwealth *v.* Williams, Appellant.

Argued November 14, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

186

*Byrd R. Brown,* for appellant.

*William Claney Smith,* Assistant District Attorney, with him *Edward C. Boyle,* District Attorney, for Commonwealth, appellee.

OPINION BY WOODSIDE, J., January 16, 1962:

This is an appeal from the judgment of sentence after the refusal of the court below to grant a motion for a new trial made on the ground of alleged errors in the part of the Court's charge to the jury relating to a confession.

The defendant, George Williams, and 16 other persons were arrested during a raid on a gambling game. During the course of the raid, the police officers found three envelopes containing 51 packets of heroin on the floor near the table where a card game had been in progress when they entered the room. The defendant was convicted of illegal possession of the narcotics found in the envelopes. The only evidence at the trial to connect the defendant with the heroin was his presence, along with 16 others, in the room where it was found, and an oral confession made by him to police officers, and later to a magistrate, that he had been keeping the unlawful drugs for a friend and had the envelopes in his possession at the time of the raid. The defendant denied at his trial that he had ever had possession of the illegal narcotics and contended that he knew nothing about the envelopes until after the offi-

cers found them on the floor. He said that he had admitted having possession of the narcotics only to obtain his release from custody.

The raid was made at 1:15 o'clock in the afternoon of February 29, 1960. All of the 17 persons present in the room when the officers arrived were taken to the police station and charged with violation of the gambling law and the Narcotics Act. The 17 persons arrested in the raid were detained over night. The following day they were given a hearing at which they were all held for further investigation. They were returned to the cell block and questioned by the narcotics squad of the city police. They all denied having any knowledge of the heroin which the police had found.

Williams testified at the trial that he had been questioned before being placed in the cell on February 29th, and again briefly after midnight. He testified that he requested permission of the officer interrogating him to make a telephone call but was denied permission. He further testified that the morning following the raid he asked for permission to give bail and was told by the officer that none of the 17 persons being detained could get bail "until someone admits to having these packages."

Williams further testified as follows concerning what occurred after the first hearing: "After we went back to the cell block we were all in cells. So we said: 'What are we going to do? We can't call anyone. We won't get out until somebody admits having these.' And I said, 'Well, I was supposed to be at work today.' I said, 'I haven't been able to report off work and my wife doesn't know where I am. I'll tell them I'm the man and maybe they'll let us out.' That looked like what the officers wanted, someone to admit to having it, and they'll release us."

The narcotic officers questioned Williams on three or four occasions. The officers testified that he made

no request to use the telephone or to get bail. It is not denied, however, that after the magistrate's hearing on the morning after the raid, all 17 defendants were kept in custody, and that later, after Williams confessed to possession of the narcotics, bail was set for him and for the operator of the gambling game, and the other 15 defendants were fined $10 and discharged.

Williams refused to make or sign a written confession, but his oral admission concerning the possession of the heroin is a confession and is admissible in evidence only if voluntarily made. A confession may be in any form and hence may be oral. 10 P.L.E., Criminal Law, §251.

Under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, a conviction in a state court following the admission into evidence of a confession which is involuntary, i.e., the product of coercion, either physical or psychological, cannot stand. *Rogers v. Richmond,* 365 U. S. 534, 540, 81 S. Ct. 735, 5 L. Ed. 2d 760 (1961).

On the other hand, the Fourteenth Amendment does not prohibit a state from such detention and interrogation of a suspect as under the circumstances appear reasonable and not coercive. *Stein v. New York,* 346 U. S. 156, 184, 73 S. Ct. 1077, 97 L. Ed. 1522 (1953). The interrogation may take place at a police station so long as it is conducted fairly, reasonably, within proper limits and with full regard to the rights of those being questioned. *Culombe v. Connecticut,* 367 U. S. 568, 81 S. Ct. 1860, 6 L. Ed. 2d 1037 (1961). Mr. Justice FRANKFURTER, speaking for the court in the *Culombe* case said: ". . . the problem of reconciling society's need for police interrogation with society's need for protection from the possible abuses of police interrogation decisively devolves upon the courts, particularly in connection with the rules of evidence which regulate the admissibility of extrajudicial confessions. Under

our federal system this task, with respect to local crimes, is, of course, primarily the responsibility of the state courts. The Fourteenth Amendment, however, limits their freedom in this regard. It subjects their broad powers to a limited, but searching, federal review . . ." p. 587.

The latest pronouncement of the test which must be applied to determine the admissibility of confessions is set forth by the United States Supreme Court in *Culombe v. Connecticut,* supra, pp. 601, 602, as follows: "It is impossible for this Court, in enforcing the Fourteenth Amendment, to attempt precisely to delimit, or to surround with specific, all-inclusive restrictions, the power of interrogation allowed to state law enforcement officers in obtaining confessions. No single litmus-paper test for constitutionally impermissible interrogation has been evolved: neither extensive cross-questioning—deprecated by the English judges; nor undue delay in arraignment—proscribed by McNabb; nor failure to caution a prisoner—enjoined by the Judges' Rules; nor refusal to permit communication with friends and legal counsel at stages in the proceeding when the prisoner is still only a suspect—prohibited by several state statutes. (Citing).

"Each of these factors, in company with all of the surrounding circumstances—the duration and conditions of detention (if the confessor has been detained), the manifest attitude of the police toward him, his physical and mental state, the diverse pressures which sap or sustain his powers of resistance and self-control —is relevant. The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne

and his capacity for self-determination critically impaired, the use of his confession offends due process. Rogers v. Richmond, 365 U. S. 534. The line of distinction is that at which governing self-direction is lost and compulsion, of whatever nature or however infused, propels or helps to propel the confession."

Even before the adoption of the Fourteenth Amendment to the Federal Constitution, the Supreme Court of Pennsylvania held a confession to be inadmissible because it was made at a preliminary hearing after the magistrate had administered an oath to the defendant and told her, "If you do not tell the truth, I will commit you." Such language, along with administering an oath, said Chief Justice GIBSON speaking for the Court, was sufficient to exclude any confession induced by it. *Commonwealth v. Harman,* 4 Pa. 269 (1846).

The rule excluding confessions and the rule giving a privilege against compulsory testimonial self-incrimination have frequently been blended into one principle by judicial expression. Wigmore thought that this blending was error because the history of the two principles is wide apart—differing by a hundred years in origin—and in practice the two principles do not have the same boundaries. VIII Wigmore (3rd Ed.), §2266. But a distinction of the two rules on grounds of principle is no longer easy because involuntary confessions, originally excluded solely on the grounds of untrustworthiness, are now excluded despite their trustworthiness.

In *Rogers v. Richmond,* supra, p. 541, Mr. Justice FRANKFURTER speaking for the Court said: "To be sure, confessions cruelly extorted may be and have been, to an unascertained extent, found to be untrustworthy. But the constitutional principle of excluding confessions that are not voluntary does not rest on this consideration. Indeed, in many of the cases in which the command of the Due Process Clause has compelled us

to reverse state convictions involving the use of confessions obtained by impermissible methods, independent corroborating evidence left little doubt of the truth of what the defendant had confessed. Despite such verification, confessions were found to be the product of constitutionally impermissible methods in their inducement. Since a defendant had been subjected to pressures to which, under our accusatorial system, an accused should not be subjected, we were constrained to find that the procedures leading to his conviction had failed to afford him that due process of law which the Fourteenth Amendment guarantees."

In the case now before us the trial judge's charge on the confession is as follows: "Now, in this case, too, you have the confession of the Defendant. Now, confessions are acknowledgements of the commission of a criminal act and, like admissions, they are received against the party making them, on the theory that they are declarations against his interest and, therefore, probably true. The value of a confession consists in its probable truth. And that is true for the reason that ordinarily men will not confess themselves guilty of a crime unless they are guilty, since in so doing they are conscious that by so doing they create a certain likelihood of their improper conviction and punishment. Therefore, the value of such a confession depends upon its voluntary character and its having been made without coercion exerted upon the person, or improper inducements. As far as this case is concerned, the mere fact that this Defendant was held in the police station overnight, or two nights, is not evidence, in our opinion, of any coercion. He says himself he made the statement voluntarily. But you have to pass upon the reason he gave for making it. But, of course, a confession should be received with caution, not only because of the danger of a mistake when it is orally made, or by reason of a misunderstanding of the wit-

ness to whom it was made, but for the further reason that the mind of the defendant under stress of an accusation of a crime is subject to varying hopes, or motives of hope and fear which may tend to induce an untrue confession. But a confession that is voluntarily made is entitled to great weight and when it is corroborated by other circumstances, then that is sufficient for conviction." The defendant took a specific exception to this part of the charge.

In its opinion on a motion for a new trial alleging error on this point in the charge, the court below said, "Under the circumstances here present it was not necessary to instruct the jury that if it found the defendant's statements were not voluntarily made they must be disregarded." This is error. It *was* necessary to so instruct the jury. Presumably the court below treated the testimony of the defendant which attempted to establish that the confession was improperly obtained as affecting only the credibility of the confession and not its admissibility. The court below cites *Commonwealth v. Johnson,* 372 Pa. 266, 274, 93 A. 2d 691 (1953), which quotes from *Commonwealth v. Wilson,* 186 Pa. 1, 40 A. 283 (1898), as follows: "'. . . If it [a confession] is induced by what may be called collateral inducements . . . Such inducements are to be considered as affecting, not the admissibility of the statements made by the prisoner against himself, but their credibility . . .' "

*Commonwealth v. Johnson* follows generally the theory suggested by Wigmore that the only real danger and weakness in a confession is the danger of a false statement, and that "The policy of the future, then, should be to receive all well-proved confessions in evidence, and to leave them to the jury, subject to all discrediting circumstances, to receive such weight as may seem proper." III Wigmore (3rd Ed.), §867.

This theory has been followed by many courts including the appellate courts of this Commonwealth. But, regardless of what Pennsylvania courts may think of Wigmore's conclusion, it is evident from what Mr. Justice FRANKFURTER said in the *Rogers* and *Culombe* cases that he and a majority of the Supreme Court of the United States have rejected it. A legal standard which takes into account the circumstance of probable truth or falsity of a confession can not be used to determine its admissibility, says the Supreme Court of the United States in *Rogers v. Richmond,* supra, p. 543. The test must be whether constitutionally impermissible methods were used, says that Court in *Culombe v. Conn.,* supra, p. 601. Thus it is evident that the basic ruling of *Commonwealth v. Johnson,* supra, quoted above, can no longer be followed by us.

Nor can we follow all of the rule stated in *Commonwealth v. Simmons,* 361 Pa. 391, 400, 401, 65 A. 2d 353 (1949) by Mr. Justice STERN, later Chief Justice, as follows: ". . . where the Commonwealth's witnesses show that a confession is made voluntarily *without such threats or inducements as might secure a false confession,* it must be admitted; if afterwards the defendant testifies, or produces other witnesses who testify, that it was *not* voluntarily made, it becomes a question for the jury, who must be instructed that, if they find the confession was not voluntarily made, they must wholly disregard it: Commonwealth v. Epps, 193 Pa. 512, 516, 44 A. 570, 571; Commonwealth v. Spardute, 278 Pa. 37, 48, 122 A. 161, 165; Commonwealth v. Lockard, 325 Pa. 56, 62, 188 A. 755, 757; Commonwealth v. Jones, 341 Pa. 541, 548, 549, 19 A. 2d 389, 393." The phrase which we have italicized above sets forth a test which takes into account the probable truth or falsity in determining the admissibility of a confession and violates the recent pronouncements of the Supreme Court of the United States.

Our courts may, however, follow the procedural method of determining the admissibility of confessions which has been set forth in *Commonwealth v. Simmons,* supra. This is relevant here because we have before us not only the tests to be applied in order to determine the admissibility of the confessions at the trial, but also who shall apply the tests.

The Fourteenth Amendment does not forbid jury trial to determine whether or not a confession was voluntary. The states are free to allocate functions as between judge and jury as they see fit. *Stein v. New York,* supra, 346 U. S. 156, p. 179.

Under our law in Pennsylvania if the facts concerning the events leading to the confession are beyond dispute, the admissibility of a confession becomes a question of law for the court's summary disposition. Ordinarily, however, whether a particular confession is less than voluntary depends upon issues of fact which are for the jury to resolve. *Commonwealth v. Bryant,* 367 Pa. 135, 144, 79 A. 2d 193 (1951).

In the recent case of *Commonwealth v. Ross,* 403 Pa. 358, 365, 169 A. 2d 780 (1961), Mr. Justice JONES said: ". . . the court decided that the question of the voluntary nature of the confession was one of fact to be determined, under appropriate instructions, by the jury. The court in its instructions to the jury carefully and adequately outlined for the jury Ross' contention that the confession was impermissibly obtained. Implicit in the verdict of the jury is a finding that the confession was voluntarily given."

When the Commonwealth's witnesses in the case before us told of the defendant's confession without relating circumstances which indicated that it was involuntary, it was proper to present the confession to the jury. However, when the defendant testified to circumstances relative to the confession which, if believed, would have thrown doubt upon whether it was

voluntarily made, the question of whether or not the confession may be considered should have been submitted to the jury. *Commonwealth v. Simmons,* supra. The jury should have been instructed to first pass upon whether or not the confession was voluntary, and to consider it only if it were found to have been made voluntarily. A jury with a confession before it must ignore that confession as though it had never been introduced if it finds that the confession was not voluntarily made.

Of course, if the defendant's evidence, even if accepted as true, would be insufficient to support a finding that the confession was involuntary there would be no need to submit the issue to the jury. Furthermore, if the indisputable evidence establishes that the confession was not voluntary then the trial judge should refuse to present the confession to the jury, or if it was already before the jury, the court should withdraw it from the jury's consideration.

The charge of the trial court in this case was erroneous and inadequate.[1] It was erroneous in that it applied the test of trustworthiness to the admissibility of a confession, and it was inadequate in that it did not specifically charge that before considering the confession the jury had to decide whether or not it was voluntary, or in other words whether or not it was obtained by constitutionally impermissible methods.

We think it was also error to tell the jury that the confession was voluntarily made because the defendant said it was voluntarily made. It is evident from the citations and quotations used in this opinion that among the most respected legal minds of the country there is the widest divergence of the meaning of "volun-

---

[1] It should be said on behalf of the trial judge that the *Culombe* case was not filed until after this case was tried and that the *Rogers* case had been so recently filed that it was not likely to have come to the trial judge's attention prior to his charge.

tary" as used in this connection. All confessions consciously made are in a sense "voluntary", but on the other hand, confessions obtained by the police are not "voluntary in the sense that the [confessors] wanted to make them or that they were completely spontaneous, like a confession to a priest, a lawyer, or a psychiatrist." *Stein v. New York,* supra, 346 U. S. 156, 186. Aside from the legal attempts to define "voluntary confessions," the word "voluntary" as commonly used and as defined in Webster's New International Dictionary (2d Ed.) has divergent meanings as applied to our present problem. For example, voluntary means "intended", "purposed", "not accidental"; it also means "unimpelled by another's influence."

Summarizing: The Supreme Court of the United States by its holdings in the *Rogers* and *Culombe* cases compels the Pennsylvania courts to revise the test which they have been using to determine the admissibility of a confession. The question whether a confession is admissible cannot be determined by a legal standard which takes into account the circumstances of probable truth or falsity of the confession. The test that must be used is whether the behavior of the law enforcement officials was such as to overbear the confessor's will to resist and bring about a confession not freely self-determined—a question to be answered with complete disregard of the truth or falsity of the defendant's statement. *Rogers v. Richmond,* supra, 365 U. S. 534, 543, 544 (1961).

If the uncontested evidence establishes coercive forces set in motion by the law enforcement officials which are powerful enough to draw forth a confession, the admissibility of such confession becomes a question of law for the court's summary disposition, but ordinarily it is a question of fact for the jury whether a particular confession is involuntary. *Commonwealth v. Bryant,* supra, 367 Pa. 135, 144, 79 A. 2d 193 (1951).

When there is evidence from which the jury could find that a confession was involuntary, it must be instructed that it should first consider whether or not the confession was voluntarily made, and unless it is convinced beyond a reasonable doubt that the confession was voluntary, it may not consider the confession regardless of its belief in the trustworthiness of the confession.

The jury should be instructed on the meaning of voluntary as it is used in this connection. The appellate courts of this Commonwealth do not prescribe precise language to be used by the trial courts in their charges. When charging on this point the trial courts might do well to keep in mind what the Supreme Court of the United States has said concerning the use of "constitutionally impermissible methods" in the inducement of confessions.

The *Culombe* case holds that detention and interrogation of one suspected of crime by state law enforcement officers is permissible and that neither cross-questioning, undue delay in arraignment, failure to caution a prisoner or refusal to permit communication with friends and legal counsel will, standing alone, necessitate the rejection of a confession obtained by the officers, but that each of these factors, in company with all the surrounding circumstances—the duration of the detention, the manifest attitude of the police toward him, his physical and mental state, and the diverse pressures which sap or sustain his powers of resistance and self-control—must all be considered. The ultimate test is whether the confession is the product of an essentially free and unconstrained choice by its maker. The line of distinction between voluntary and involuntary is that at which governing self-discretion is lost and compulsion of whatever nature or however imposed propels the confession.

Following the *Rogers* case, we have emphasized in this opinion that the admissibility of a confession cannot depend upon its trustworthiness. It must be remembered, however, that after the issue of voluntariness is determined and the confession is before the jury for use in determining the guilt or innocence of the defendant, the truthfulness of the confession is still a matter for the jury's consideration. There are probably very few instances where a voluntary confession is false, but a jury is not *required* to accept a confession as true even if it is voluntarily made.

The appellant also objects to the charge on character evidence. Although we find no reversible error in the charge on this point, if the case is retried before a jury with substantially the same evidence, it would be well for the trial judge to follow more closely the language of the appellate courts on the weight to be given to character evidence.

Judgment of sentence is reversed and a new trial granted.

———

DISSENTING OPINION BY WRIGHT, J.:

I respectfully dissent. No objection was made to the admission of appellant's confession in evidence, and the issue of fact concerning its voluntary character was properly submitted to the jury. The pertinent portion of the charge is quoted in the majority opinion. In my view it is in conformity with the requirements set forth in *Commonwealth v. Simmons,* 361 Pa. 391, 65 A. 2d 353; certiorari denied, 338 U.S. 862. I agree with the court below that it was not necessary "under the circumstances here present" to re-state what had in effect already been explained to the jury, namely, that a confession involuntarily made must be disregarded. We should be loath to interpret the decisions of the United States Supreme Court in such a manner as to (1)

create a problem for our trial judges which we fail to aid them in solving when we do not prescribe the language they are expected to employ; (2) create an additional loophole to assist guilty defendants in avoiding just punishment. I would affirm the judgment of the lower court.